# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1601

_____

Brian T. Dahle

*Plaintiff - Appellee*

v.

Kilolo Kijakazi, Acting Commissioner of Social Security

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 14, 2022
Filed: March 7, 2023

_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.

_____

MELLOY, Circuit Judge.

Brian Dahle applied for and was denied disability benefits from the Social Security Administration ("SSA"). Dahle appealed the decision to the District of Minnesota arguing in part that the Administrative Law Judge ("ALJ") who oversaw the case lacked authority because SSA Acting Commissioner Nancy Beryhill was not properly serving as Acting Commissioner when she ratified the ALJ's appointment.

The district court agreed. Because we find Berryhill was properly serving as Acting Commissioner when she ratified the appointment, we reverse.

I.

The Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. § 3345–3349d, permits certain individuals to serve temporarily in "principal officer" positions which normally require Presidential nomination and Senate confirmation. The FVRA allows the "first assistant" to the principal officer to serve in an acting capacity or "the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity . . . ." 5 U.S.C. § 3345(a). Section § 3346(a) places time limitations on individuals serving under § 3345:

> [T]he person serving as an acting officer as described under section 3345 may serve in the office–
> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

The parties agree the Commissioner of Social Security is a principal officer who must be appointed by the President and confirmed by the Senate. Additionally, the parties agree the Deputy Commissioner acts as the first assistant to the Commissioner for purposes of the FVRA. In accordance with the FVRA, President Obama issued a memorandum order in late 2016 establishing an order of succession for the SSA. The memo specified that if the Commissioner and Deputy Commissioner positions were both vacant, the Deputy Commissioner for Operations would serve as Acting Commissioner. See Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. 96,337 (Dec. 23, 2016).

-2-

Carolyn Colvin, who had been appointed and confirmed as the Deputy Commissioner for Social Security, resigned as Acting Commissioner in January 2017. At that time the offices of Commissioner and Deputy Commissioner became vacant. Consistent with President Obama's succession memo, Deputy Commissioner for Operations Nancy Berryhill began serving as Acting Commissioner. She served until the Government Accountability Office indicated she was in violation of the FVRA time restrictions, at which time she ceased serving as Acting Commissioner. In April 2018, President Trump submitted a nomination for SSA Commissioner to the Senate. Berryhill resumed serving as Acting Commissioner after the nomination was sent to the Senate pursuant to § 3346(a)(2). In July 2018, Acting Commissioner Berryhill issued an order ratifying the appointments of the agency's ALJs to ensure they were properly appointed pursuant to the recent Supreme Court case, Lucia v S.E.C., 138 S. Ct. 2044, 2050–51 (2018) (finding ALJs within the SEC are "Officers of the United States" who must be appointed by the President, "Courts of Law" or "Heads of Department" as required by the Appointments Clause).

In August 2018, an ALJ whose appointment had been ratified by Berryhill denied Dahle's application for disability benefits. Dahle sought review of the SSA decision in the district court. He argued that the decision was wrong on the merits and the ALJ acted without authority. The district court found the ALJ lacked authority to hear the case because Berryhill was not properly serving as Acting Commissioner when she issued the order ratifying the appointment of the ALJ. The SSA appealed.

II.

"We review claims of constitutional error and issues of statutory construction de novo." Foulk v. Charrier, 262 F.3d 687, 703 (8th Cir. 2001) (citation omitted).

A.


The parties agree that if an individual is serving the 210-day period under § 3346(a)(1) when a nomination is submitted, the individual may continue to serve under § 3346(a)(2). Those events make subsection 2 a tolling provision. Dahle argues subsection 2 is exclusively a tolling provision. Therefore, he argues, if an individual has already served for 210-days under subsection 1, and has ceased to serve, that same individual cannot recommence serving after a nomination has been sent to the Senate under subsection 2. In essence, Dahle argues, and the district court found, a person cannot serve noncontinuously under § 3346(a) subsections 1 and 2. Dahle concludes that because Berryhill was not a proper Acting Commissioner her order ratifying the ALJ appointments was not valid.

The government argues the FVRA authorizes an individual who has ceased serving under § 3346(a)(1) to begin serving again under § 3346(a)(2) once a nomination is sent to the Senate. The government has the better argument.

Subsection 2 can act as a tolling provision to subsection 1. But it also provides an independent period of time for an individual to serve as an acting officer. The use of "or" as a connector between subsections 1 and 2 requires the subsections be given distinct, independent, meanings. United States v. Woods, 571 U.S. 31, 45 (2013) (finding the use of "or" "is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" (citation omitted)). Subsections 1 and 2 operate independently, providing distinct limitations on when an individual who is qualified to serve under § 3345 may begin or end their service. Subsection 1 allows an individual to serve for 210 days after a vacancy occurs. Subsection 2 allows an individual to serve from the time a nomination is sent to the Senate until that nomination is no longer pending. Subsection 2 contains no time limit expressed in a number of days and speaks in no manner as to other requirements for a person to serve as an acting officer. Rather, it provides a time limit through reference to Senate

action. There is simply no textual basis to imply that subsection 1 and its 210-day limit somehow restrict a person's service under subsection 2.

To argue the other side, Dahle places great weight on the use of the present tense in section a. Section 3346(a) states: "the person *serving* as an acting officer as described under section 3345 *may serve* in the office" for no longer than 210 days or once a nomination for the office is submitted to the Senate.

Dahle asserts the word "serving" in section a requires that an individual be presently serving as Acting Commissioner under subsection 1 in order to serve under subsection 2. But "serving" appears in the text of section a, therefore it should apply equally to subsections 1 and 2. If an individual must be "serving" to qualify to serve under subsection 2, then it would follow that an individual must be "serving" to qualify to serve under subsection 1. That would require an individual be properly serving as an acting officer before their 210-day period under § 3346(a)(1) begins, an impossibility. See Norwest Bank of North Dakota, N.A. v. Doth, 159 F.3d 328, 333 (8th Cir. 1998) ("When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." (citations omitted)).

The logical way to read the phrase "the person serving" is as a reference to the person qualified to be serving under § 3345, not as a reference to individuals "presently" serving under § 3346(a)(1). Section 3346 does not grant the power to serve, but places time restrictions on service under § 3345. Therefore, it follows that "the person serving" would be serving under § 3345, not § 3346(a)(1). This is what other courts to address the issue have decided. See e.g., Snyder v. Kijakazi, No. 1:21-CV-00103-LRR, 2022 WL 4464847 *18-21 (N.D. Iowa, Sept. 26, 2022) (summarizing cases). The other phrases or word choices discussed by Dahle, such as "may serve" or "the person," do not lend any more credence to Dahle's interpretation.

-5-

In a further attempt to argue subsection 2 serves exclusively as a tolling provision, Dahle cites the Supreme Court's decision in N.L.R.B. v. SW General, Inc., 580 U.S. 288 (2017). SW General says subsection 2 can act as a tolling provision. See SW General, 580 U.S. at 236. SW General does not say subsection 2 is *solely* a tolling provision. Just because a provision in a statute allows for one result, does not mean it prohibits a separate result. At any rate, the statement about tolling was dicta. The issue in the case concerned eligibility to serve under § 3345. Although we give Supreme Court dicta more weight than other judicial dicta as a prophecy of what the Court might hold, it is not binding. In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1064 (8th Cir. 2017).

The extratextual evidence strengthens the interpretation outlined above. The Supreme Court has held "[t]here is no need to consult extratextual sources when the meaning of a statute's terms is clear." McGirt v. Oklahoma, 140 S. Ct. 2452, 2469 (2020). While the text here is clear, the legislative history further proves subsection 2 is not solely a tolling provision. A Senate committee report said an "acting officer may serve even if the nomination is submitted after the 150 days has passed although . . . the acting officer may not serve between the 151st day and the day the nomination is submitted." S. Rep. No. 105-250, at 14 (1998). The only change between the proposed language discussed in the Senate report and the final law was the number of days an individual could serve under subsection 1. See Karen E. v. Kijakazi, No. 21-CV-3015 CJW-MAR, 2022 WL 17548642 *17 (N.D. Iowa Sept. 15, 2022) (noting the Senate increased the time an individual could serve in subsection 1 from 150 days to 210 days). The text and legislative history show the intent of the legislative branch was to allow an individual to serve noncontinuously under subsections 1 and 2.

B.

In the alternative, Dahle argues the district court's decision can be affirmed because Berryhill was never directed to serve by the president. In essence, he argues

the 2016 succession memo became null and void when administrations changed in 2017. This argument fails.

Section 3345 says "the President (and only the President) may direct" an agency employee to serve in an acting capacity. 5 U.S.C. § 3345(a)(3). Dahle argues the word "direct" means only President Trump could direct someone to serve as Acting Commissioner during the relevant time period. To "direct" requires affirmative action, but President Obama's 2016 succession memo qualified as such. The issue then becomes whether a presidential order is carried forward to the next president. The general rule is that presidential orders without specific time limitations carry over from administration to administration. Benjamin B. Wilhelm, *Presidential Directives: An Introduction*, Congressional Research Service 1 (Nov. 13, 2019) ("Presidential directives with ongoing effect remain in force across presidential transitions"); see e.g., Bostock v. Clayton Cnty., Georgia 140 S.Ct. 1731, 1831 (2020) (Kavanaugh, J., dissenting) (noting that "Nixon and Clinton Executive Orders remain in effect today"). While an incoming president can undo a previous presidential order, a new president does not have to take affirmative action to keep existing orders in place. Dahle provides no authority indicating succession orders are any different from other presidential orders. The text of the FVRA likewise does not change the default position that presidential orders, including succession memos under the FVRA, carry over from one administration to the next.

The FVRA authorizes succession memos such as the one President Obama issued in December 2016. One way to designate an individual to serve as Acting Commissioner is for the President to direct an employee of an agency to serve as acting director. 5 U.S.C. § 3345(a)(3). This is exactly what the 2016 succession memo did. The succession memo directed the Deputy Commissioner for Operations to perform the functions of the Commissioner if the Commissioner and Deputy Commissioner positions were vacated. This is a common practice used by presidents

to ensure a smooth transition of power. <u>See e.g.,</u> Providing an Order of Succession Within the General Services Administration, 85 Fed. Reg. 55,585 (Sept. 2, 2020).

## III.

Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs. Therefore, we reverse the grant of summary judgment and remand for further proceedings on the merits.

_____