PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2430
_____

STEFAN INGRAM,

                                         Appellant

v.

EXPERIAN INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION SERVICES, LLC;
WAYPOINT RESOURCE GROUP, LLC;
COMCAST CABLE COMMUNICATIONS, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-18-cv-03776)
District Judge: Honorable Mitchell S. Goldberg
_____

Argued March 22, 2023

Before RESTREPO, PHIPPS and ROTH, *Circuit Judges*

(Opinion filed: October 2, 2023)

Cary L. Flitter                     [ARGUED]
Andrew M. Milz
Jody T. Lopez-Jacobs
Flitter Milz
450 N Narberth Avenue, Suite 101
Narberth, PA 19072

Brent F. Vulling
Vullings Law Group, LLC
3953 Ridge Pike, Suite 102
Collegeville, PA 19426

*Counsel for Appellant*

Ryan Cooper                        [ARGUED]
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

Imad D. Abyad
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

*Counsel for Amici Curiae in
support of Appellants*

David P. Helwig                     [ARGUED]
Marks O'Neill O'Brien Doherty & Kelly
420 Fort Duquesne Boulevard
One Gateway Center, Suite 575
Pittsburgh, PA 15222

Cecil J. Jones
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RESTREPO, Circuit Judge

Appellant Stefan Ingram was simply trying to clear his credit report of an account that was falsely created in his name. The Fair Credit Reporting Act ("FCRA") provides consumers two ways to accomplish this; the first is by filing a "direct" dispute with the entity that furnished the consumer reporting agency with the disputed information, referred to as "the furnisher." The second is by filing an "indirect" dispute with the consumer reporting agency, which will then pass it to the furnisher for further investigation. Ingram pursued his claim through both avenues and, when these measures were unsuccessful, through the courts. On summary judgment, the District Court rejected Ingram's claim that his indirect dispute was inadequately investigated by the furnisher in this case, after concluding that it had no duty to investigate because Ingram did not provide enough documentation to inform a "bona fide," nonfrivolous dispute. R. at 15.

This appeal asks whether we may imply into the FCRA an exception allowing a furnisher discretion to refuse to investigate an indirect dispute it deems frivolous or irrelevant, as the District Court did. We hold today that such an exception is unsupported by the plain text of the statute; furnishers are permitted to find that a direct dispute submitted by a consumer is frivolous, and consumer reporting agencies may find that an indirect dispute submitted by a consumer is frivolous, but the FCRA provides no such discretion to furnishers that receive an indirect dispute secondhand from a consumer reporting agency. We will accordingly reverse the disposal of Ingram's action and remand for evaluation of whether Waypoint's investigation into Ingram's indirect dispute was reasonable.

4

## I. BACKGROUND

### A. Factual Background

As we are evaluating the grant of a motion for summary judgment, the following facts are viewed in the light most favorable to Appellant Ingram as the nonmovant.

Stefan Ingram claims that he discovered a fraudulent account had been opened in his name with Comcast Cable Solutions ("Comcast") after it was listed on his credit report. R. at 198; 185. He alleges that the account was opened without his authorization, for service at a Philadelphia address where he has never lived. *Id.* at 198–99.

#### 1. Ingram's Direct Dispute

Ingram, through his counsel, filed a direct dispute with Comcast requesting that Comcast investigate and report the account to the consumer reporting agencies as disputed. *Id*. at 200–01; 113. Comcast responded asking Ingram to provide several documents, including proof of residence, a notarized fraud and identity theft affidavit from the Federal Trade Commission, a driver's license, and a police or incident report. *Id*. at 201; 109. For various reasons, Ingram did not follow up with the requested affidavit and Comcast ultimately did not decide whether the account was opened fraudulently. *Id*. at 202; 78. Comcast instead referred the disputed account to Appellee Waypoint Resource Group, LLC ("Waypoint") for collection. *Id*. at 204. Waypoint then reported the delinquent account to consumer reporting agency Experian Information Solutions ("Experian"). *Id.* at 110.

### 2. *Ingram's Indirect Dispute & Waypoint's "Investigation"*

After the Waypoint account appeared on Ingram's consumer report, Ingram challenged it again, this time by means of an indirect dispute with Experian. *Id*. at 207; 88–89. On July 16, 2018, in accordance with the FCRA's requirements governing indirect disputes passed from consumers to consumer reporting agencies, Experian forwarded notice of Ingram's dispute to the entity that had originally provided it the information, Waypoint, to investigate. *Id*. at 208–09; 53–54. The notice included Ingram's statement that "THIS IS NOT MY ACCOUNT. PLEASE REMOVE FROM MY CREDIT." R. at 208–09; 53–54.

Waypoint internally assigned the dispute to "Administrative Wage Garnishment Analyst," Samantha Pelfrey, who updated Ingram's address in Waypoint's system and confirmed the account name and social security number, but did not further investigate the matter as to fraud. *Id*. at 213; 217–18; 115. Ingram contends, "based on Waypoint's account notes and Pelfrey's testimony, [that] Pelfrey's 'investigation' of Plaintiff's dispute lasted for thirteen (13) seconds." R. at 218; 59; 119. Ingram charges that this was inadequate under the FCRA. Appellant Br. 20. The result of the investigation was that Waypoint continued to erroneously report that the Comcast account tradeline was reflecting a balance of $769. *Id*. at 231; 111.

On November 15, 2018, after this lawsuit commenced, Waypoint received a second dispute from Experian, which noted that the account in Ingram's name was the subject of litigation, that Ingram believed the account was fraudulent, and

6

that he had obtained a police report.[1]  *Id*. at 221; Def.'s Mot. Summ. J. Ex. G at 5, *Ingram v. Experian Info. Sols.*, Inc., No. 18-cv-3776, 2021 WL 2681275 (E.D. Pa. June 30, 2021), ECF No. 96-11.  Ingram avers that, according to Waypoint's internal notes, it did not delete the erroneous account until that date at the earliest.  *Id*.; R. at 232.

Ingram alleges that as a result of Waypoint's reporting of the fraudulent Comcast account to Experian, his credit score deteriorated and led him to be denied an apartment rental and loan applications, and caused him great stress.  *Id*. at 104; 232; 243–44.  His Amended Complaint calls for damages stemming from "monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges," as well as "great physical, emotional and mental pain," and finally, "financial and dignitary harm arising from the injury to credit rating and reputation."  R. at 158.

## B.  Procedural History

On September 5, 2018, Ingram filed suit against Defendants Waypoint, Experian, Comcast, and Equifax Information Services, LLC ("Equifax") in the Eastern District of Pennsylvania, asserting claims under the FCRA and the Fair Debt Collection Practices Act, among others.  *Id*. at 27.  All Defendants settled other than Waypoint.  *Id*. at 4.

On June 30, 2021, the District Court granted a motion for summary judgment filed by Waypoint, which disposed of all remaining claims.  *Id*. at 3.  Ingram filed this timely appeal

---

[1]  Ingram states that this dispute was not filed or initiated by him.  R. at 232.

on July 30, 2021. *Id*. at 1. Ingram elected to limit his appeal to the FCRA count.

## II. ANALYSIS

### A. Jurisdiction & Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to the FCRA, 15 U.S.C. § 1681p, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(d). We have appellate jurisdiction under 28 U.S.C. § 1291.

Questions of statutory interpretation are subject to *de novo* review. *Walsh v. Defs., Inc.*, 894 F.3d 583, 586 (3d Cir. 2018). Further, we exercise plenary review over the District Court's grant of summary judgment, "[d]rawing all reasonable inferences in favor of the party against whom judgment is sought," and affirming a grant of summary judgment "only when no issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law." *Prusky v. Reliastar Life Ins. Co.*, 445 F.3d 695, 699 (3d Cir. 2006) (citing Fed. R. Civ. P. 56).

### B. Consumer Credit Reporting Legal Framework

For better or for worse, a strong credit score can be a gateway to certain foundational aspects of modern American life: employers look to credit reports of job applicants, landlords use them to vet prospective renters, and they can be determinative of one's access to credit and the terms of that

access.[2]  *See* S. Rep. No. 103-209, at 1–2 (1993).  While it is certainly true that "[t]hose who extend credit or insurance or who offer employment have a right to the facts they need to make sound decisions," the FCRA was drafted in recognition that the potential for abuse and misinformation in the collection and reporting process could harm consumers.  S. Rep. No. 91-517, at 2–3 (1969).

The FCRA as such created a regulatory framework governing consumer credit reporting, in order "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)); 15 U.S.C. § 1681 *et seq*.  This Court has recognized that "any interpretation of [the FCRA] must reflect" its "remedial" purpose and "consumer oriented objectives," which explicitly include assisting consumers with correcting information recorded in their credit files.  *Cortez*, 617 F.3d at 706 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).  Accordingly, among the various obligations the FCRA imposes on entities involved in the credit reporting process is the duty to investigate certain disputes submitted by consumers.  *See Seamans*, 744 F.3d at 864; 15 U.S.C. §§ 1681s-2(a)(8); 1681i.  In essence, the purpose of the FCRA is clear:  to help consumers like Ingram navigate the often opaque and occasionally exasperating universe of credit reporting, and seek redress where necessary.  *See generally* S. Rep. No. 91-

---

[2]  The term "credit report" is used throughout this opinion as equivalent to a "consumer report."  15 U.S.C. § 1681a(d).

9

517 (1969) (discussing the myriad issues faced by consumers in understanding the information on their credit reports and difficulties they may face in correcting errors when they arise).

The consumer credit reporting system involves two primary parties: (1) *consumer reporting agencies*—like Experian—which compile reports on consumers and make them available to lenders, insurers, employers, landlords, and other users, and (2) *furnishers*—like Waypoint—which provide information about consumers to consumer reporting agencies. Br. Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission in Supp. of Pl.-Appellant and Rev. at 3 [hereinafter Amicus Br.]. The FCRA provides two discrete avenues for consumers to challenge the accuracy or completeness of the information in their credit reports through either of these parties, respectively. 15 U.S.C. §§ 1681s-2(a)(8); 1681i. A direct dispute is when a consumer provides notice of the dispute to the person or entity that furnished the incorrect or incomplete information, the furnisher. *Id*. § 1681s-2(a)(8). Unless the furnisher finds as an initial matter that the dispute is frivolous or irrelevant, it has a duty to investigate the matter and take appropriate remedial action. *Id*. § 1681s-2(a)(8)(E)–(F).

Meanwhile, indirect disputes—like the one at issue here—are when a consumer instead disputes information with the consumer reporting agency, which then must provide notice of the dispute to the furnisher. *Id*. § 1681i(a)(2)(A). Assuming the agency does not reasonably determine as a threshold matter that the dispute is frivolous or irrelevant, the agency must perform an investigation into the disputed information and update or delete it as necessary. *Id*. §§ 1681i(a)(3)(A); 1681i(a)(1)(A). Upon receipt of notice from the consumer reporting agency, the furnisher must also

10

investigate the dispute and take appropriate action. *Id*. § 1681s-2(b)(1).

With a few narrow exceptions, the FCRA provides a right of action to consumers against furnishers or consumer reporting agencies who are either willful or negligent "in failing to comply with any requirement imposed under [the FCRA]." *Id*. §§ 1681o; 1681n. This can include the failure to perform an adequate investigation where required. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358–59 (3d Cir. 2011).[3]

As discussed above, the FCRA allows entities first receiving a dispute from the consumer—the furnisher in the case of a direct dispute and the consumer reporting agency in the case of an indirect dispute—the discretion to preliminarily vet the dispute for frivolousness or irrelevance before investigating. The issue in this case is whether, after a consumer reporting agency refers an indirect dispute to the furnisher, the furnisher as the secondary recipient can also decide a dispute is frivolous or irrelevant and decline to perform an investigation of its own. We hold today that the furnisher does not have such discretion, and as such, Waypoint had a duty to investigate Ingram's indirect dispute when it received notice thereof from Experian.

***

The instant appeal involves furnisher Waypoint's duty to investigate Ingram's indirect, not his direct, dispute.

---

[3] Notably, the FCRA does not extend this cause of action to consumers challenging a furnisher's failure to investigate under Section 1681s–2(a). 15 U.S.C. § 1681s–2(c).

However, both avenues by which a consumer may request an investigation into purportedly erroneous information on their credit reports are relevant to our analysis and will be discussed below.

### 1.     Direct Disputes

Section 1681s-2(a)(8) of the FCRA governs the duties of furnishers upon receipt of a direct dispute from a consumer. 15 U.S.C. § 1681s-2(a)(8).  It states that within thirty (30) days of receiving a notice of a direct dispute from a consumer, the furnisher that provided the information in dispute to a consumer reporting agency "shall" (1) investigate the disputed information, (2) review all relevant information provided by the consumer, and (3) complete the investigation and report the results to the consumer.  *Id*. §§ 1681s-2(a)(8)(E).  If the furnisher's investigation finds that the information reported was inaccurate, it must promptly notify each consumer reporting agency to which the information was furnished.  *Id.* § 1681s-2(a)(8)(E)(iv).

However, the FCRA's provisions governing direct disputes provide an explicit exception to these obligations if the furnisher "reasonably determines that the dispute is frivolous or irrelevant," including because the consumer failed "to provide sufficient information to investigate the disputed information" or the dispute is "substantially the same" as a dispute already investigated.  *Id.* § 1681s-2(a)(8)(F)(i).  If the furnisher determines that the dispute is frivolous or irrelevant, it must promptly notify the consumer, inform them of the reason for the determination, and identify any additional information necessary for it to investigate the disputed information further.  *Id.* § 1681s-2(a)(8)(F)(ii)–(iii).

12

## 2. *Indirect Disputes*

Meanwhile, Section 1681i of the FCRA governs the duties of consumer reporting agencies upon receipt of an indirect dispute from a consumer, like the one at issue here. *Id*. § 1681i. When a consumer notifies a consumer reporting agency that they dispute the accuracy or completeness of the information in their consumer file, the agency has two principal obligations. First, within five (5) days of receiving the dispute, the agency must provide notice of the dispute to the furnisher that provided the disputed information. *Id*. § 1681i(a)(2)(A). The notice to the furnisher must include "all relevant information regarding the dispute that the agency has received from the consumer." *Id*. Second, within thirty (30) days of receiving the dispute, the agency "shall" conduct a "reasonable" investigation to determine whether the disputed information is inaccurate. *Id*. § 1681i(a)(1)(A). After completing the investigation, the consumer reporting agency is required, among other responsibilities, to delete any information that could not be verified from the consumer's file and notify the consumer in writing of the results of the investigation. *Id*. § 1681i(a)(5)(A), (6).

As with furnishers investigating direct disputes, the FCRA explicitly allows a consumer reporting agency to "terminate" its investigation into an indirect dispute "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *Id*. § 1681i(a)(3)(A). If the agency determines that a dispute is frivolous or irrelevant, it must notify the consumer, provide the reasons for the determination, and identify any information that is needed to investigate the dispute. *Id*. § 1681i(a)(3)(B)–(C).

After receiving notice of an indirect dispute from a consumer reporting agency, the furnisher has similar, though not identical duties. Within the same timeframe in which the consumer reporting agency must complete its investigation, *id*. § 1681s-2(b)(2), the furnisher "shall" also (1) investigate the disputed information, (2) review all relevant information provided by the consumer reporting agency, and (3) report the results of the investigation to the consumer reporting agency, *id*. § 1681s-2(b)(1). The furnisher's investigation must be "reasonable." *Seamans*, 744 F.3d at 864. If the furnisher finds the disputed information is incomplete or inaccurate, it must notify all other consumer reporting agencies to which it furnished the information, and modify, delete, or permanently block reporting of such information going forward. *See* 15 U.S.C. § 1681s-2(b)(1)(E).[4]

Here, in holding that Waypoint had no duty to investigate Ingram's indirect dispute because Ingram failed to provide the additional information previously requested, the District Court cited provisions governing a furnisher's rights and duties when treating a *direct* dispute in its analysis of how furnisher Waypoint treated Ingram's *indirect* dispute. This was an error. Once Waypoint received Ingram's indirect dispute from Experian, it had a duty to perform a reasonable investigation, regardless of (1) Ingram's prior failures to comply with requests for additional information, or (2) the fact that Waypoint could have made such requests if it was investigating a direct dispute. As such, there remains a

---

[4] The furnisher's duty to prevent further dissemination of disputed information applies to not only inaccurate or incomplete information, but also that which simply could not be verified. 15 U.S.C. § 1681s-2(b)(1)(E).

14

material question of fact as to the reasonableness of Waypoint's investigation under the FCRA. For the reasons stated below, we will accordingly reverse the grant of summary judgment and remand for resolution of this factual dispute.

### C. Application to Ingram's Dispute

#### 1. Waypoint's Duty to Investigate Ingram's Indirect Dispute was Triggered

The District Court rejected Ingram's claim that Waypoint improperly investigated his indirect dispute because Ingram did not submit "all supporting documentation or information reasonably required to substantiate the basis of [his] dispute." R. at 15 (quoting 15 U.S.C. § 1681s-2(a)(8)(d)(iii)). Therefore, Ingram had "not satisfied the requirements" of a "bona fide dispute" under Section 1681s-2(a)—the provision of the FCRA governing a furnisher's duties when treating *direct* disputes. *Id*. Again citing Section 1681s-2(a)(8), a provision titled "Ability of Consumer to Dispute Information Directly With Furnisher," it also concluded that "because [Ingram] failed to provide sufficient information upon which Waypoint could investigate," Ingram's "request for an investigation may be deemed frivolous." *Id*. (citing 15 U.S.C. § 1681s-2(a)(8)(F)(i)(I)). The District Court thus granted summary judgment to Waypoint because Ingram failed to satisfy his "burden of coming forward with evidence showing that he submitted a bona fide dispute," and therefore, Waypoint's duty to investigate had never been triggered in the first place. *Id*.

Ingram counters on appeal that 15 U.S.C. § 1681s-2(b)(1), relating to "Duties of Furnishers of Information Upon Notice of Dispute"—not Section 1681s-2(a)—governs his

indirect dispute. He points to language in Section 1681s-2(b)(1) stating that once a furnisher like Waypoint receives notice of an indirect dispute from a consumer reporting agency, it "shall . . . conduct an investigation with respect to the disputed information" and "review all relevant information provided by the consumer reporting agency."[5] 15 U.S.C. § 1681s-2(b)(1)(A)–(B); *see* Appellant Br. at 18. He argues that Waypoint's duty to investigate was triggered when it received his indirect dispute from Experian because the language above is mandatory and contains no exceptions, and Waypoint therefore lacked discretion to demand further information from

[5] Waypoint argues unpersuasively that Ingram has waived this argument because he did not cite or address 15 U.S.C. § 1681s-2(a) or other authorities relied on in this appeal before the District Court. Appellee Br. at 11. First, a party need only preserve issues, not cite or distinguish specific authorities. *See United States v. Abreu*, 32 F.4th 271, 275 (3d Cir. 2022) ("preservation requires advancement of the same legal principle, not citation to the same legal precedent"). Ingram previously argued that he submitted a proper indirect dispute under the FCRA, that Waypoint's investigation was unreasonable, and that he was harmed as a result. Br. in Opp. to Summ. J. at 5, *Ingram v. Experian Info. Sols.*, Inc., No. 18-cv-3776, 2021 WL 2681275 (E.D. Pa. June 30, 2021), ECF No. 100-2. This is enough to preserve his argument. Even if that were not the case, this Court nonetheless retains discretion to consider "pure question[s] of law" which are "closely related" to arguments that the parties did raise and for which "[n]o additional fact-finding is necessary," like those at issue here. *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).

Ingram before taking action on his dispute. As such, Waypoint's duty to investigate Ingram's dispute had been triggered when it received notice of his indirect dispute from Experian, leaving an open question of fact as to whether Waypoint's 13-second peek at Ingram's account was sufficient under the FCRA.

We agree with Ingram. It is assumed that Congress "expresses its intent through the ordinary meaning of its language" and therefore our inquiry starts "with an examination of the plain language of the statute." *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015) (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008)).

The FCRA is not ambiguous on this point. It expressly states that if a consumer reporting agency "reasonably determines that [an indirect] dispute . . . is frivolous or irrelevant," it is not required to continue with its investigation. 15 U.S.C. § 1681i(a)(3)(A). Similarly, when a furnisher receives a direct dispute, the FCRA clearly provides that the furnisher is not required to investigate so long as it "reasonably determines that the dispute is frivolous or irrelevant." *Id*. § 1681s-2(a)(8)(F)(i). The statute is structured such that, in these parallel provisions, the party that first receives the dispute from the consumer retains explicit discretion to discontinue its investigation should the consumer's dispute appear frivolous or irrelevant. Meanwhile, Section 1681s-2(b), which governs "duties of furnishers of information upon notice of a dispute" from a consumer reporting agency, charges furnishers with a duty to investigate indirect disputes forwarded to them by the agencies, without providing for any similar exception.

17

Courts generally presume "that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020) (quoting *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 537 (1994)). Further, "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). Despite providing such exceptions elsewhere, the FCRA provides no explicit exception for furnishers to decline to investigate an indirect dispute that they receive from a consumer reporting agency, and we will read the statute accordingly.

The Sixth Circuit came to the same conclusion in *Boggio v. USAA Fed. Sav. Bank* when it found that a consumer's failure to comply with a furnisher's internal fraud investigation policies did not justify the furnisher's failure to investigate the consumer's indirect dispute. 696 F.3d 611, 619 (6th Cir. 2012). Similar to Waypoint here, the furnisher alleged that its "standard procedures" required a consumer to file a fraud affidavit or police report before it would conduct further inquiry into a disputed claim. *Id*. However, the Court concluded that "the text of § 1681s–2(b) does not permit furnishers to require independent confirmation of materials contained in a [consumer reporting agency] notice of a dispute before conducting the required investigation." *Id*. It reasoned that a consumer's failure to provide identity-theft information "cannot obviate a furnisher's § 1681s–2(b) duty; otherwise, Congress would have indicated as much by including [such an exception] within § 1681s–2(b) itself." *Id*. at 619 n.6. The

18

Court as such concluded that summary judgment was inappropriate on the consumer's claim that the furnisher's investigation was unreasonable. *Id*. at 620.

Further, enforcing the FCRA according to its terms and requiring a furnisher to investigate an indirect dispute forwarded to it by a consumer reporting agency produces no unreasonable results. *Bonkowski*, 787 F.3d at 200 ("When the statute's language is plain, the court's obligation is to enforce the statute according to its terms, at least where the disposition is not absurd . . . ."). Furnishers may still protect themselves from inane direct disputes by performing a preliminary review for frivolousness. Further, the FCRA provides no cause of action to consumers challenging a furnisher's failure to investigate under Section 1681s–2(a). 15 U.S.C. § 1681s–2(c); *Seamans*, 744 F.3d at 864. As to indirect disputes, Congress provided a "filtering mechanism" to protect furnishers from overexposure through consumer suits under Section 1681s–2(b) by setting up the consumer reporting agencies to receive indirect disputes and "allowing [the agencies] to terminate [their] investigation of disputed item if [they] 'reasonably determine[] that the dispute by the consumer is frivolous or irrelevant.'" *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (quoting 15 U.S.C. § 1681i(a)(3)).[6]

---

[6] We decline to opine on whether the FCRA can be read to fully excuse the agency's duty to notify the furnisher of an indirect dispute it deems frivolous, as advanced by Amici. Br. Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission in Supp. of Pl.-Appellant and Rev. at 24–26 (citing *Boggio*, 696 F.3d at 616). Section

As a further clarification, the FCRA's statutory history puts any lingering questions to rest. Indeed, a glance at that history only further supports that this structure was intended to require that a furnisher receiving notice of an indirect dispute investigate, suspicions of frivolity aside. Originally enacted in 1970, the FCRA was amended in 1996 to add a new section describing the responsibilities of furnishers, in attempt to close a "gap in the FCRA's coverage," that had previously allowed furnishers to "irresponsibly" frustrate a consumer reporting agency's efforts to verify inaccurate information, while still avoiding liability. S. Rep. No. 103–209, at 6 (1993); Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104–208, Subtitle D, ch. 1, § 2413, 110 Stat. 3009, 447–49 (1996) (codified as amended at 15 U.S.C. § 1681s–2). It would make little sense, considering this intended purpose of 15 U.S.C. § 1681s–2, to allow a furnisher to shirk its duty to act on an indirect dispute to which it was referred by a consumer reporting agency, in many cases after the agency has itself determined that the dispute is not frivolous.

***

Waypoint raises two primary counterarguments on appeal. First, it points to two decisions from district courts in

---

1681i(a)(3)(A) states only that the agency's duty to investigate, as described in Section 1681i(a)(1), is abrogated by a finding of frivolousness or irrelevance, but it makes no explicit mention of how such a finding impacts the agency's duty to notify the furnisher discussed in Section 1681i(a)(2). Such a reading is neither clear from the plain text of the statute, nor is it necessary to our disposition, which relates to defining furnishers' duties under the FCRA.

20

Pennsylvania which held that the furnisher's ability to perform a frivolousness review after receiving an indirect dispute is *implicit* in the FCRA: *Palouian v. FIA Card Servs.*, No. 13-cv-293, 2013 WL 1827615, at *3 (E.D. Pa. May 1, 2013) and *Noel v. First Premier Bank*, No. 12-cv-50, 2012 WL 832992, at *9 (M.D. Pa. Mar. 12, 2012). In both *Palouian* and *Noel*, like here, plaintiffs filed both a direct dispute with the furnisher and an indirect dispute with the consumer reporting agency, but the court only relied on the FCRA provisions for direct disputes in deciding that it was appropriate for the furnisher to request further information from the consumer before proceeding with its investigation. 2013 WL 1827615, at *3; 2012 WL 832992, at *9–10. This reading of the FCRA— which was also endorsed by the District Court here—reasons that if a consumer filing an indirect report fails to "provide[] sufficient information to the [furnisher] to enable [it] to investigate [the] dispute," for example, by failing to reply to a follow-up request for further information, there is no "bona fide" dispute to begin with. *Palouian*, 2013 WL 1827615, at *4; R. at 12–15. Lacking a dispute, the furnisher has no duty to investigate. *Id*.

We decline to endorse this reading of the indirect dispute section of the statute. Not only does it atextually vest threshold vetting power with the furnisher when the FCRA explicitly grants the consumer reporting agency such power over indirect disputes, but to the extent furnishers do have such power, Congress only discussed it in provisions of the statute governing direct, not indirect disputes. *See Aristy-Rosa v. Att'y Gen. United States*, 994 F.3d 112, 115 (3d Cir. 2021) (refusing to imply in one part of a statute what Congress expressly provided for in another); *cf. Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (rejecting effort to

21

import furnisher's duties upon receiving a direct dispute when analyzing its duties when receiving an indirect dispute).[7]

Further, courts regularly take into consideration if a furnisher received minimal information regarding the indirect dispute in determining the reasonableness of its investigation. *Seamans*, 744 F.3d at 865 ("where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted"); *see also Gorman*, 584 F.3d at 1157; *Chiang v. Verizon New England Inc.,* 595 F.3d 26, 38 (1st Cir. 2010); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). "Indeed, as the statute recognizes, the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the [consumer reporting agency] does on []investigation," as the furnisher is the entity that supplied the disputed information in the first place. *Gorman*, 584 F.3d at 1156. This suggests that furnishers should not be absolved entirely from investigating simply because additional information from the consumer might yield a more robust investigatory result. *See Boggio*, 696 F.3d at 619 ("At issue is whether [the furnisher's] actual investigation was reasonable, and not whether it was reasonable for [the furnisher] to have an optional, more thorough review available to consumers.").

---

[7] The fact that here, unlike in *Palouian* and *Noel*, the party that received the direct dispute here—Comcast—was technically a different party than the one that received the indirect dispute—Waypoint—does not affect our overall conclusion as to the duties of the party that received the indirect dispute.

Second, Waypoint contends that because Ingram first filed a direct dispute with Comcast and then did not follow up with the requested documentation, he should not be allowed to cure this failure by "later invoking §1681s-2(b)(1)" and filing an indirect dispute with Waypoint through Experian. Appellee Br. at 4. Unfortunately for Waypoint, filing an indirect dispute is not quite the "back door" for consumers that it suggests, as the statute already provides for independent, first-line review of an indirect dispute by the consumer reporting agency. 15 U.S.C. § 1681i(a)(3)(A). Under Section 1681i(a)(3)(A), the agency is permitted to request additional information from the consumer, where necessary, before completing its own investigation—in the same way as a furnisher reviewing a direct dispute. *See id*.; § 1681s–2(a)(8)(F)(i). As such, reading the statute to allow furnishers to conduct what will often be a second review for frivolousness would only serve to create an additional hurdle for consumers filing indirect disputes when compared to direct disputes. *See Chiang*, 595 F.3d at 37 ("it would be inconsistent for plaintiffs to bear a weightier burden in suits against a [consumer reporting agency] under § 1681i(a) than in suits against furnishers under § 1681s–2(b)"). More fundamentally, it would undercut a principal goal of the FCRA by shielding furnishers from liability and making it more difficult for consumers to dispute and correct inaccurate information in their credit reports. *See Cortez*, 617 F.3d at 706 ("any interpretation of [the FCRA] must reflect" its "remedial" nature and "consumer oriented objectives," which include

23

assisting consumers with correcting information recorded in their credit files) (citation omitted).[8]

For these reasons, we conclude that Waypoint indeed had a duty to investigate Ingram's indirect complaint, regardless of Ingram's purported failure to supplement his dispute with additional information, or the fact that he had previously submitted a direct dispute with Comcast that was deemed frivolous.

---

[8] There is other evidence baked into the FCRA of intent to provide the consumer reporting agency sole discretion to find an indirect dispute frivolous, request further information from a consumer where necessary, and ultimately terminate the investigation. In both situations where the FCRA does provide discretion to determine the frivolousness of a claim before investigating—in the case of a consumer reporting agency for an indirect dispute and for a furnisher for a direct dispute—it also mandates that the consumer be promptly notified of the result of the investigation and the basis of this determination. 15 U.S.C. §§ 1681i(a)(3)(B); 1681s–2(a)(8)(F)(ii)–(iii). However, a furnisher that determines that an indirect dispute forwarded to it for investigation is frivolous would have no such obligation to provide notice to the consumer under the statute. This is likely because in drafting the FCRA, Congress presumably did not anticipate providing furnishers such discretion. Amicus Br. at 23. Yet Waypoint's interpretation of the FCRA would allow furnishers to deem a dispute frivolous and take no further action without providing notice to the consumer.

### 2. Ingram's FCRA Claim Against Waypoint Was Not Ripe for Summary Judgment

A furnisher has a duty to conduct a "reasonable" post-dispute investigation into a consumer's complaint. *SimmsParris*, 652 F.3d at 359. Whether a furnisher has satisfied its obligation to conduct a reasonable investigation is a fact-intensive question that requires "weighing 'the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information.'" *Seamans*, 744 F.3d at 865 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432–33 (4th Cir. 2004)).

The District Court also acknowledged that "genuine issues of material fact would likely preclude summary judgment" on Waypoint's argument that its "investigation . . . when considered in light of the scant information provided, was reasonable." R. at 16 n.3. That is because "whether a furnisher's post-dispute investigation was reasonable is 'normally a question for trial.'" *Id.* (quoting *Seamans*, 744 F.3d at 864–65). Consequently, because we conclude today that furnisher Waypoint had a duty to conduct a reasonable investigation of the indirect dispute and was not permitted to reject the dispute as frivolous before investigating, it follows that the reasonableness of any investigation Waypoint conducted was not a question ripe for summary judgment in this instance.

## III. CONCLUSION

We will accordingly reverse the District Court's grant of summary judgment to Appellee Waypoint and remand for

evaluation of the reasonableness of Waypoint's investigation into Ingram's indirect dispute under the FCRA.