**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2988

_____

JOSEPH GAIAMBRONE,
                              Appellant
v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(District Court No. 3-22-cv-00489)
District Judge:  Honorable Joseph F. Saporito, Jr.

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
June 5, 2024

_____

Before:  CHAGARES, Chief Judge, CHUNG and FISHER, Circuit Judges

(Filed: July 24, 2024)

_____

OPINION[1]

_____

CHUNG, Circuit Judge.

Gaiambrone appeals the District Court's decision affirming the denial of

Gaiambrone's applications for social security benefits.  For the reasons below, we will

_____

[1]      This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

affirm.

I.    <u>BACKGROUND</u>[2]

The Social Security Administration (SSA) is an independent agency within the Executive Branch.  The Commissioner of the SSA is a "PAS" role – Presidentially-Appointed with the advice and consent of the Senate – pursuant to the Appointments Clause of the Constitution.  U.S. Const. art. II, § 2, cl. 2.  The SSA Commissioner is subject to the Federal Vacancies Reform Act (FVRA) which establishes the procedures for temporarily filling covered vacant PAS offices and establishes time limits for the duration of such temporary positions.  5 U.S.C. §§ 3345–49.

In 2016, pursuant to the FVRA, President Obama promulgated a new order of succession in which the Deputy Commissioner for Operations (DCO) would serve as acting SSA Commissioner if both the Commissioner position and next senior position, Deputy Commissioner (also a PAS), were vacant.  Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. 96337 (Dec. 23, 2016); <u>see also</u> 5 U.S.C. § 3345(a)(2), (3).  When President Trump assumed office in early 2017, both positions were vacant and then-DCO Berryhill began serving as acting SSA Commissioner per this succession order.  A year later, when the Government Accountability Office reported that Berryhill's service exceeded the FVRA's 300-day

---

[2]    Because we write for the parties, we recite only facts pertinent to our decision.

time limit[3] for acting service, Berryhill stepped down as acting Commissioner and resumed her role as DCO.

In April 2018, President Trump nominated his first candidate for SSA Commissioner. Berryhill then began serving a second time as acting Commissioner and did so for the period that the nomination was pending before the Senate pursuant to the succession order and the FVRA. During that period, the Supreme Court issued an opinion holding that the Security and Exchange Commission's Administrative Law Judges (ALJs) were non-PAS officers who, under the Appointments Clause, had to be appointed by the President, a court of law, or the head of the agency. Lucia v. SEC, 585 U.S. 237, 244, 251 (2018). Shortly after this decision, Berryhill ratified the appointment of several previously-appointed SSA ALJs, including the ALJ who eventually considered Gaiambrone's administrative appeal, to ensure that their appointment complied with Lucia. SSR 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019).

Gaiambrone applied for disability insurance benefits and supplemental security income and, on administrative review, an ALJ denied both applications in December 2021. Gaiambrone timely filed a complaint before the District Court challenging the ALJ's decision.[4] Gaiambrone asserted that Berryhill's acting service and her ratification

---

[3] Under the FVRA Berryhill could serve for 300 days: 210 days starting 90 days after January 20, 2017 (inauguration day and the day the position became vacant). 5 U.S.C. § 3349a(b).

[4] With the parties' consent, Chief Magistrate Judge Joseph F. Saporito, Jr. conducted the proceedings in this matter. We refer to the Chief Magistrate Judge as the District Court throughout this opinion.

of the ALJ violated both the Appointments Clause and the FVRA. Therefore, Gaiambrone argued, the ALJ was without authority to adjudicate the applications for benefits. The District Court rejected Gaiambrone's arguments and determined that Berryhill was properly serving as acting Commissioner when she ratified the SSA ALJ appointments. Gaiambrone now timely appeals that decision.

II.     DISCUSSION[5]

Gaiambrone raises two arguments under the Appointments Clause and two arguments under the FVRA challenging the validity of Berryhill's service as acting Commissioner and her ratification of the SSA ALJs. We reject each argument.

    A.     Constitutional Challenges

        1.     The Appointments Clause does not mandate a 180-day time limit on acting service

Gaiambrone first argues that Berryhill's service violated the Appointments Clause because the Clause contains an "inherent" 180-day time limit on acting as an agency head.[6] Opening Brief at 14.

---

[5] The District Court had jurisdiction to review the final decision of the Social Security Administration under 42 U.S.C. § 405(g). We have jurisdiction to review the District Court's judgment under 28 U.S.C. § 1291. We review questions of constitutional law, statutory law, and statutory interpretation de novo. United States v. Norwood, 49 F.4th 189, 200 (3d Cir. 2022); Ingram v. Experian Info. Sols., Inc., 83 F.4th 231, 236 (3d Cir. 2023).

[6] In addition to her first period of service as acting Commissioner, Berryhill had served roughly 90 days when she ratified the ALJ nominations during her second period of service.

We decline to read the Constitution as establishing such a limit. As Gaiambrone concedes, the text of the Appointments Clause does not command such a reading. In addition, while the Supreme Court has clarified that acting service is permitted for a "limited time," United States v. Eaton, 169 U.S. 331, 343 (1898), it has never specified a set number of days for such limitation. Gaiambrone primarily relies on a portion of the dissent in Rop v. Federal Housing Finance Agency, 50 F.4th 562, 580–83 (6th Cir. 2022), cert. denied, 143 S. Ct. 2608 (2023) for support. There, the dissent concluded that "historical practice suggests" that acting service beyond 180 days is "presumptively unconstitutional" under the Appointments Clause. Id. at 580–81. The facts in Rop are distinguishable, however, because the acting principal in question was not subject to any limitation on his service, suggesting a possible need for a constitutionally-supported time limit. See id. at 572 (noting that FHFA is not subject to FVRA). In contrast, the service of an acting SSA Commissioner is subject to the time limitations set by Congress in the FVRA, National Labor Relations Board v. SW General, Inc., 580 U.S. 288, 293–94, 296 (2017), and no court has found that these Congressionally-set limitations are unconstitutional (nor has any court concluded that the Appointments Clause imposes a 180-day, or other, set time limit). We similarly decline to do so here, and we conclude that Berryhill's service did not violate an "inherent" 180-day time limit.

2. The Appointments Clause does not require supervision of an acting principal officer by a Senate-confirmed principal officer

Nothing in the text of the Appointments Clause limits an acting principal's authority to exercise the full executive power of the office, e.g., to only making non-

5

binding decisions.  Gaiambrone relies on United States v. Arthrex, Inc., 594 U.S. 1 (2021), however, to argue that the Appointments Clause limits inferior officers, such as acting principal officers,[7] from exercising executive power without the supervision of another PAS officer.  We reject this interpretation of Arthrex.

In Arthrex, the Court held that "[o]nly an officer properly appointed to a principal office may issue a final decision binding the Executive Branch."  594 U.S. at 23. Because the statute at issue in Arthrex allowed non-PAS officers to make final, binding decisions insulated from review by a PAS officer, the Court found that statute unconstitutional as applied.  Id. at 25–26.[8]  Here, Berryhill was properly serving in a principal office pursuant to the President's authority under the Appointments Clause and, as discussed further below, under the FVRA.[9]  See Eaton, 169 U.S. at 343 (rejecting constitutional challenge to acting service); see also, Rop, 50 F.4th at 570 ("[T]he [Supreme] Court has clearly addressed inferior officers taking on the responsibilities of

---

[7]     A person who performs the duties of a principal officer in an acting capacity is an inferior officer.  See Edmond v. United States, 520 U.S. 651, 661 (1997); United States v. Smith, 962 F.3d 755, 764 (4th Cir. 2020).

[8]     The Court concluded that the proper remedy was to remand the case for review of the inferior officers' final decisions by a PAS officer.  Notably, although that PAS officer was an acting officer like Berryhill, 594 U.S. at 26, the Supreme Court took no issue with his authority to review the inferior officers' decisions.  Id. at 27.  This undermines Gaiambrone's argument that we should read Arthrex as curtailing Berryhill's ability to exercise the full authority of the Commissioner's office.

[9]     The Appointments Clause allows Congress to vest the President with authority to appoint inferior officers, U.S. const. art. II, § 2, cl. 2; Smith, 962 F.3d at 764.  Congress exercised this authority in passing the FVRA and vested in the President the power to appoint the acting SSA Commissioner.  5 U.S.C. § 3345(a)(2), (3).

principal officers when vacancies arise as a constitutionally permitted practice"). We agree with our sister Courts of Appeals that the Appointments Clause allows such an acting officer to exercise all of the functions and duties of a vacant PAS position. See, e.g., Arthrex, Inc. v. Smith & Nephew, Inc., 35 F.4th 1328, 1334 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 2493 (2023) ("Consistent with Eaton [and the FVRA] … an inferior officer may temporarily perform an absent PAS officer's duties without violating the Appointments Clause"); Smith, 962 F.3d at 764. Accepting otherwise would thwart acting Commissioners' ability to ensure the continuity of the essential work of their agencies, including binding decisions, frustrating the very purpose of acting service. SW, 580 U.S. at 292–93 (noting Congress' long history of permitting officials to "temporarily carry out the duties of a vacant PAS office in an acting capacity" in order to ensure "responsibilities" of the office are promptly handled). In sum, we conclude that the Appointments Clause did not require that Berryhill's ratification of the SSA ALJs be subject to review by a PAS officer.

  B. <u>Statutory Challenges</u>

    1. <u>The FVRA permits two separate, independent time periods for acting service</u>

The FVRA allows an acting officer to serve in the PAS office "(1) for no longer than 210 days beginning on the date the vacancy occurs; or (2) … once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a). This text specifies two different periods when individuals may serve as acting PAS officers.

7

Nonetheless, Gaiambrone urges us to read subsections (1) and (2) as together permitting only a total 210-day duration of such service. Gaiambrone argues that, if a nomination is submitted during the 210 days set forth in subsection (1), that time may be tolled while the nomination is pending. Gaiambrone asserts that when a nomination is made after the expiration of the initial 210 day period, however, the FVRA does not permit further acting service, despite the plain text of subsection (2) allowing service "for the period that the nomination is pending in the Senate." Id. Though we agree that subsection (2) can act as a tolling provision,[10] the text also provides an independent period of time to serve as an acting officer. See Dahle, 62 F.4th at 427; Rush, 65 F.4th at 120; Seago, 91 F.4th at 390–91.

Berryhill began serving as acting Commissioner a second time when President Trump submitted his first nomination for that position. This service complied with the FVRA. We thus agree with our sister Circuits in concluding that Berryhill was lawfully serving as acting SSA Commissioner when she ratified the appointments of the SSA ALJs. Seago, 91 F.4th at 390; see also, Dahle, 62 F.4th at 429; Rush, 65 F.4th at 124.

2.  The FVRA does not mandate that only a sitting President must direct acting service

---

[10]    The Supreme Court stated in dicta that subsection (2) "tolls [the] time limit while a nomination is pending." SW Gen., 580 U.S. at 296. We observe, as have other Circuits, that "[n]othing in SW General forecloses the possibility that *in addition* to operating as a tolling provision, § 3346(a)(2) allows another independent period of acting service if a nomination is submitted after (a)(1)'s 210-day period." Rush v. Kijakazi, 65 F.4th 114, 122 (4th Cir. 2023), cert. denied sub nom. Rush v. O'Malley, 144 S. Ct. 999 (2024); see also Dahle v. Kijakazi, 62 F.4th 424, 428 (8th Cir. 2023), cert. denied sub nom. Dahle v. O'Malley, 144 S. Ct. 549 (2024).

The FVRA states that "the President (and only the President) may direct a person" to serve in an acting capacity. 5 U.S.C. § 3345(a)(3). Gaiambrone interprets this language to require that the sitting President personally and affirmatively direct acting appointments under the FVRA.[11]

The Eighth Circuit considered and rejected this argument, concluding that President Obama's succession memo qualified as a "direction" that Berryhill act as Commissioner. See Dahle, 62 F.4th at 429. In reaching this conclusion, it reasoned that succession memos under the FVRA remain effective from one administration to the next. Id. We agree that a succession memo constitutes "direction" as contemplated by the FVRA and that nothing in the text of the FVRA mandates that a sitting President personally name a person to act as a principal, rather than make the selection by operation of a succession memo. We therefore conclude that Berryhill's service as acting SSA Commissioner was at the direction of the President via the 2016 succession memo in compliance with the FVRA. See id. Accordingly, Gaiambrone's challenge to the ALJ ratification on this basis also fails.

III.    CONCLUSION

For the foregoing reasons, we will affirm.

---

[11]    Berryhill served as acting Commissioner pursuant to President Obama's succession order which not only provided for the DCO to assume the role of Commissioner, but also expressly provided President Trump the ability "to depart from [the] memorandum in designating an acting Commissioner." Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. at 96337. Gaiambrone does not claim that the succession order was invalid nor contest that President Trump did not exercise his discretion to appoint someone else to fill the acting role.