# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2024

Lyle W. Cayce
Clerk

————————

No. 23-40001

————————

Emily Seago,

*Plaintiff—Appellant*,

*versus*

Martin O'Malley, *Commissioner of Social Security*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:21-CV-136

———————————————————————

Before Richman, *Chief Judge*, and Haynes and Duncan, *Circuit Judges*.

Haynes, *Circuit Judge*:

Emily Seago appeals the district court's grant of summary judgment on her disability benefits claim. Seago argues Nancy Berryhill was unlawfully serving as acting Social Security Commissioner in July 2018 when she ratified the appointment of the Administrative Law Judge who later denied Seago's claim. For the reasons set forth below, we reject that argument and AFFIRM the district court's grant of summary judgment.

No. 23-40001

## I.     Background

The Commissioner of the Social Security Administration ("SSA") must be appointed by the President and confirmed by the Senate, in accordance with the Appointments Clause of the U.S. Constitution. 42 U.S.C. § 902(a)(1); *see* U.S. CONST. art. II, § 2, cl. 2. Designed to curb abuses of power and ensure public accountability in appointments, this cross-branch nomination and confirmation process is "among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). But the process of filling offices that require a presidential nomination and Senate confirmation—called "PAS offices"—can take considerable time. *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 292–93 (2017). Congress has long recognized that vacancies in PAS offices could leave critical governmental duties unperformed for an extended period. *Id.* It has responded to that concern by allowing the President to authorize an individual to temporarily fill the position in an acting capacity, without Senate confirmation. *Id.*

In 1998, Congress passed the Federal Vacancies Reform Act of 1998 ("FVRA"), which defines the circumstances under which an acting officer can serve in a PAS office without a presidential nomination or Senate confirmation. Pub. L. No. 105-277, 112 Stat. 2681-611 (1998) (codified at 5 U.S.C. §§ 3345–3349e). Under FVRA § 3345, the "first assistant" generally serves as the acting officer in a vacant PAS office. 5 U.S.C. § 3345(a)(1). The Deputy Commissioner of the SSA is the "first assistant" to the Commissioner of the SSA for FVRA purposes. 42 U.S.C. § 902(b)(4); *see also* 5 U.S.C. § 3345(a)(1). At the end of his presidency, President Obama promulgated a new "Order of Succession" for the Commissioner of the SSA, under which the Deputy Commissioner for Operations ("DCO") was first in line to serve as acting Commissioner in the event both the Commissioner

2

No. 23-40001

and Deputy Commissioner offices had been vacated.  81 Fed. Reg. 96337 (Dec. 30, 2016).

FVRA § 3346(a) limits the time allowed for acting service under § 3345:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—
>
>> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>>
>> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a); *see also id.* §§ 3346(b) (imposing different time limitations when nominations are rejected, withdrawn, or returned), 3346(c) (adjusting time limitations when vacancy occurs during adjournment of Congress sine die).

When President Trump assumed office in January 2017, the Deputy Commissioner of the SSA resigned, leaving the SSA Commissioner office empty.  Nancy Berryhill, who was serving as SSA's DCO at the time, began serving as Acting SSA Commissioner.  In November 2017, Berryhill's eligibility to serve as Acting SSA Commissioner expired under the terms of the FVRA.  *See* 5 U.S.C. §§ 3346(a)(1) (210-day cap for acting service absent a nomination), 3349a(b) (extending permissible period of acting service by 90 days during periods of presidential transition).  Berryhill stepped down as Acting SSA Commissioner in March 2018 and resumed her fulltime position as DCO.  One month later, in April 2018, President Trump nominated Andrew Saul as SSA Commissioner, and Berryhill once again became Acting SSA Commissioner.

3

No. 23-40001

In July 2018, following the Supreme Court's decision in *Lucia v. SEC*,[1] Berryhill—who was still serving as Acting SSA Commissioner—ratified the appointments of all SSA Administrative Law Judges ("ALJs"). *See* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). Saul's nomination for SSA Commissioner was still pending at the time.

Emily Seago subsequently filed an application with the SSA for disability insurance benefits under Title II of the Social Security Act. An SSA ALJ denied her claim. Seago timely appealed to the SSA Appeals Council, which denied her request for review.

Having exhausted her administrative remedies, Seago timely sought judicial review in federal district court. Seago and the government each moved for summary judgment. Seago argued, inter alia, that the time limitation on Berryhill's acting service under § 3346(a) expired in November 2017, and thus Berryhill could not have constitutionally ratified the SSA ALJs' appointments in July 2018. The magistrate judge rejected that argument and recommended granting summary judgment for the government. The district court adopted the magistrate judge's report and recommendation and then entered a final judgment on December 22, 2022. Seago timely appealed.

---

[1] 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs at the Securities and Exchange Commission ("SEC") were "Officers of the United States" who must be appointed by the President, a court of law, or a head of department. *Id.* at 2053–55. "Like the SEC ALJs at issue in *Lucia*, SSA ALJs had [previously] been selected by lower level staff rather than appointed by the head of the agency," which called all of their appointments into question after *Lucia*. *Carr v. Saul*, 593 U.S. 83, 86 (2021); *see* Exec. Order No. 13,843, 83 Fed. Reg. 32755, 32755 (July 13, 2018) (recognizing that "at least some" and "perhaps all" ALJs are subject to the Appointments Clause after *Lucia*).

## II.     Jurisdiction & Standard of Review

Seago properly invoked the district court's jurisdiction under 42 U.S.C. § 405(g).  We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

We review de novo a district court's grant of summary judgment and questions of statutory interpretation. *Bombardier Aerospace Corp. v. United States*, 831 F.3d 268, 272 (5th Cir. 2016).  In reviewing an appeal from a grant of summary judgment, we "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam).  Summary judgment is proper only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 163.

## III.     Discussion

The only issue on appeal is the construction of 5 U.S.C. § 3346(a). Seago argues that § 3346(a)(2) is solely a tolling provision.  According to that interpretation, because § 3346(a)(1)'s 210-day limit on Berryhill's acting service expired before President Trump nominated Saul, the FVRA required that the SSA Commissioner office remain vacant until the Senate voted on Saul's nomination.  Under her argument, Berryhill violated the FVRA when she resumed her position as Acting SSA Commissioner in April 2018, and she had no authority to appoint SSA ALJs in July 2018.  According to Seago, this entitles her to a new hearing before a different, properly appointed adjudicator. *See Lucia*, 138 S. Ct. at 2055.

The government disagrees.  Under its view, the subsections of § 3346(a) can operate independently, or (a)(2) can toll (a)(1) if a nomination is submitted during the 210-day period.  According to that view, Berryhill was authorized to begin a new period of acting service once Saul's nomination

No. 23-40001

was pending in the Senate, and thus the ALJ who denied Seago's benefits was properly appointed.

The Fourth and Eighth Circuits have considered this same issue, and both unanimously concluded that § 3346(a)(2) can operate as either a tolling provision to § 3346(a)(1) or as an independent period of time during which an acting officer may serve.[2] *See Rush v. Kijakazi*, 65 F.4th 114, 117 (4th Cir. 2023), *petition for cert. filed*, 92 U.S.L.W. 3045 (Sept. 8, 2023) (No. 23-243); *Dahle v. Kijakazi*, 62 F.4th 424, 427 (8th Cir. 2023), *cert. denied sub nom. Dahle v. O'Malley*, No. 23-173, 2024 WL 71921 (U.S. Jan. 8, 2024) (mem.). Based on our analysis of the statutory text and purpose, we agree with our sister circuits and conclude that Berryhill was lawfully serving as Acting SSA Commissioner under § 3346(a)(2) when she ratified the appointments of all SSA ALJs in July 2018.

### A. Statutory Text

When addressing issues of statutory interpretation, our first step is determining whether the statutory text is "plain and unambiguous." *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015) (quotation omitted). If so, we "enforce the statute's plain meaning, unless absurd." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013) (quotation omitted). Here, the text of the FVRA unambiguously indicates that an acting officer

---

[2] The district courts that have considered this issue are split. *Compare, e.g.*, *Boller v. Comm'r, SSA*, No. 421CV01001SDJCAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022) (noting "significant weight of authority from district courts across the country that have found that § 3346(a)(2) contains a spring back provision" (quotation omitted)), *report and recommendation adopted*, No. 4:21-CV-1001-SDJ, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023) *with Miller v. Comm'r, SSA*, No. 4:21-CV-01007-O-BP, 2023 WL 3814551, at *7 (N.D. Tex. June 5, 2023) (holding § 3346(a)(2) is solely a tolling provision) *and Foster v. Comm'r, SSA*, No. CV-22-00290-PHX-JAT, 2023 WL 2661608, at *1 (D. Ariz. Mar. 28, 2023) (same).

may serve during either the § 3346(a)(1) period, or the § 3346(a)(2) period, or both. Thus, in this case, our inquiry "begins and . . . ends with the language of the statute." *See id*.

The text of § 3346(a) makes clear that its two subsections operate independently. As the government states, § 3346(a) "provides that an acting officer may serve pursuant to the FVRA during *either or both* of two discrete time periods." The first period is "for no longer than 210 days beginning on the date the vacancy occurs." *See* 5 U.S.C. § 3346(a)(1). The second period begins "once a first or second nomination for the office is submitted to the Senate" and extends "for the period that the nomination is pending in the Senate." *See id* § 3346(a)(2).

These separately defined timelines indicate that § 3346(a) provides for two independent periods of acting service. The use of the word "or" to separate the two subsections confirms that these two periods can operate independently. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (explaining "or" is "almost always disjunctive"); *Horne v. Flores*, 557 U.S. 433, 454 (2009) ("Use of the disjunctive 'or' makes it clear that each of the provision's three grounds for relief is independently sufficient."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (stating that Congress's use of the word "or" indicates that one term should not be read to "modify" the other). Further, without any qualifiers, (a)(2)'s use of the word "once" indicates that acting service under that subsection begins "*at the moment when*" a nomination is submitted to the Senate—regardless of whether it falls within or outside of the 210-day period. *See Once*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/once (last visited Dec. 4, 2023) (defining "once" as "at the moment when" or "as soon as").

No. 23-40001

Our analysis is also influenced by what the statute does not include: there is *nothing* in the text that says—or, arguably, even suggests—service under § 3346(a)(1) excludes someone from also serving under § 3346(a)(2). If Congress had intended the expiration of an acting officer's 210 days of service under (a)(1) to disqualify her from serving in an acting capacity pursuant to (a)(2), surely it would have said so, but it did not. *Cf. Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (recognizing the "fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts" (brackets in original) (internal quotation marks and citation omitted)). Rather, the text makes clear an acting officer can serve under (a)(1), (a)(2), *or both*, depending on if and when the President makes a nomination.[3]

Even Seago's interpretation requires us to read § 3346(a) as inclusive. Seago purports to advocate for an exclusive reading of the statute, and yet she asserts that an acting officer may serve under both (a)(1) and (a)(2) if the President makes a nomination during the 210-day period.[4] There is thus no

---

[3] Seago argues that this inclusive construal renders the "or" in § 3346(a) surplusage. When used in its inclusive sense, "or" indicates "A or B or both." *See, e.g.*, *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). Courts have also found that "and" can mean "A or B or both." *See, e.g.*, *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 605 F.3d 1250, 1254 (11th Cir. 2010). In other words, "the inclusive sense of *or* overlaps with the several sense of *and*." *Id.* at 1254 n.8. Embracing Seago's usage of the surplusage canon in this context, then, would mean that "or" could *never* be inclusive because it could always be replaced by the several meaning of "and." We therefore conclude that the surplusage canon does not determine the outcome in this case.

[4] Seago argues that these two positions are not contradictory because "a person serves exclusively under §[ ]3346(a)(1) when they serve 'for no longer than 210 days'" but "exclusively under §[ ]3346(a)(2) when a nomination occurs during the 210-day period." Though creative, this argument is belied by the statutory text, which clearly states that the acting service period under § 3346(a)(2) runs "from the date of [a first or second] nomination." 5 U.S.C. § 3346(a)(2). Accordingly, a person who began serving before a nomination occurred could not possibly have served "exclusively under §[ ]3346(a)(2)."

reasonable interpretation of § 3346(a) that would exclude an acting officer from serving under (a)(2) if she had already served under (a)(1)—and that means the statute is unambiguously inclusive. *See In re Rogers*, 513 F.3d 212, 226 (5th Cir. 2008) (stating a statute is ambiguous only if it is "susceptible to more than one reasonable interpretation or more than one accepted meaning").

Seago also relies heavily on the word "serving" in the prefatory clause of § 3346(a), arguing the use of this present participle indicates that only people presently serving as acting officers may continue to serve once the President submits a nomination. But "serving" must be understood in the context of the phrase in which it appears: "serving as an acting officer as described under section 3345." *See* 5 U.S.C. § 3346(a). As the government notes, this is an important clarification because there are other PAS office-specific statutes with alternative means for filling vacancies. *See, e.g.*, 42 U.S.C. § 902(b)(4) (delineating some circumstances under which the Deputy SSA Commissioner will serve as Acting SSA Commissioner). The broader statutory context is also relevant, as § 3346(a) "does not grant the power to serve, but places time restrictions on service under § 3345." *See Dahle*, 62 F.4th at 428; *Rush*, 65 F.4th at 122. Reading "serving" in its proper context, we therefore conclude that the phrase "serving as an acting officer as described under section 3345" does not limit service only to "presently serving" acting officers, but rather identifies the category of acting officers to which § 3346(a)'s time limitations apply.[5]

---

[5] The Fourth and Eighth Circuits agreed that this interpretation is "logical" and "far more likely" than Seago's alternate interpretation. *See Dahle*, 62 F.4th at 428; *Rush*, 65 F.4th at 122. Even the district court in *Miller*—which Seago relies on heavily—did not find the emphasis on the present participle "serving" persuasive because "the use of the present tense is fairly read as a reference to those identified in § 3345 as qualified to serve in the acting capacity." *Miller*, 2023 WL 3814551, at *5 n.12.

Finally, contrary to Seago's assertion, our conclusion that (a)(2) can toll (a)(1) or can provide an independent timeline for acting service is entirely consistent with the Supreme Court's decision in *NLRB v. SW General*, 580 U.S. 288 (2017). The Supreme Court in *SW General* did not address the issue before us, nor did it say that § 3346(a)(2) is exclusively a tolling provision. *See generally id.*; *see also Rush*, 65 F.4th at 122 ("[FVRA §] 3346 was not at issue in *SW General*; the case concerned § 3345(b)'s restrictions on acting service by nominees.").

We are therefore compelled by the plain statutory text to conclude that § 3346(a)(2) operates both as a tolling provision and as an independent period of acting service. As such, Berryhill lawfully assumed the role of Acting SSA Commissioner under § 3346(a)(2) upon Saul's nomination, regardless of the fact that she had previously served in the same position under § 3346(a)(1).

## B. Statutory Purpose

"[A] statute's purpose may not override its plain language," but it "may be a consideration that strongly supports a textual interpretation." *United States v. Rainey*, 757 F.3d 234, 245 (5th Cir. 2014) (cleaned up) (quoting *Holloway v. United States*, 526 U.S. 1, 9 (1999)). Such is the case here. Both parties agree that a core purpose of § 3346 is to incentivize timely presidential nominations. *See SW General*, 580 U.S. at 293–94 (describing history leading to enactment of FVRA). But a presidential nomination alone cannot fill a vacant PAS office; the Senate must act as well, and a long time can pass between a presidential nomination and senate confirmation. *See SW General*, 580 U.S. at 293–94. Indeed, Saul was not confirmed until more than a year after he was first nominated. *See Political Appointee Tracker*, P'ship Pub. Serv., https://ourpublicservice.org/performance-measures/political-

appointee-tracker/ (last visited Dec. 4, 2023) (noting Saul was confirmed on June 4, 2019).

Under both parties' interpretations of § 3346(a), there is a penalty imposed on the President for not making a nomination within the 210-day window: after the period in (a)(1) expires, the acting officer must step down, leaving the PAS office vacant. This presumably will incentivize the President to nominate someone before the expiration of the 210-day period. But the point of that penalty is to put pressure on the *President*—so why would the office remain vacant after the President submitted a nomination, even if belated? Although Congress certainly has the power to put that type of pressure, we should not assume it and there is no indication in the text or history of the statute that it intended to do so here.

Seago's interpretation of § 3346(a) would extend the penalty through the days, months, or years that passed before the Senate confirmed or rejected the nominee. This case in particular exemplifies how such a vacancy can have direct, widespread effects on everyday Americans: if the SSA Commissioner office had remained vacant between March 2018 and June 2019, no one could have ratified the SSA ALJs' appointments after *Lucia*, potentially resulting in millions of benefits applications going unconsidered. *See Hearings And Appeals*, Soc. Sec. Admin., https://www.ssa.gov/appeals/about_us.html (last visited Dec. 4, 2023) (reporting that "[e]ach year, more than 1,500 [SSA] ALJs render over 650,000 decisions at the hearing level"). That is an extreme penalty not suggested by the statutory language. Further, having already fulfilled his constitutional duty to nominate, the President would be powerless to intervene.

Only the government's interpretation of § 3346(a) motivates the President to submit timely nominations without punishing the American

people—through the denial of vital public services—for the (frequent and lengthy) delays in the Senate confirmation process.  Though unnecessary in light of the unambiguous statutory text, this alignment between the plain text and the statutory purpose "strongly supports" concluding that an acting officer may serve under either or both of the time periods delineated in § 3346(a).  *See Rainey*, 757 F.3d at 245.[6]

## IV.     Conclusion

For the foregoing reasons, we conclude that § 3346(a)(2) permitted Berryhill to resume her role as Acting SSA Commissioner upon Saul's nomination in April 2018.  As such, she was lawfully serving as Acting SSA Commissioner in July 2018 when she ratified the appointment of all SSA ALJs.  We therefore AFFIRM the district court's grant of summary judgment for the government.

---

[6] Both parties also rely on legislative history in support of their interpretations of the statute, but we are not permitted to look to legislative history where—as here—the statutory text is unambiguous.  *In re Rogers*, 513 F.3d at 225–26.