# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-10956

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2025

Lyle W. Cayce
Clerk

In the Matter of Victoria Florita Durand-Day; Lavonda Latrece Evans,

*Debtors*,

Pam Bassel, *Standing Chapter 13 Trustee*,

*Appellant*,

*versus*

Victoria Florita Durand-Day; Lavonda Latrece Evans,

*Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:22-CV-994, 4:22-CV-997

---

Before Richman, Oldham, and Ramirez, *Circuit Judges*.

Irma Carrillo Ramirez, *Circuit Judge*:

A bankruptcy trustee objected to the treatment of student-loan debt under two proposed Chapter 13 plans. The bankruptcy court overruled the objections and confirmed the plans, and the district court affirmed the decision. Because the plans do not satisfy 11 U.S.C. § 1325(b)(1), the

No. 23-10956

Bankruptcy Code precludes their confirmation. Accordingly, we VACATE the confirmation of the plans and REMAND for further proceedings.

I

This appeal stems from a pair of Chapter 13 proceedings, one initiated by Victoria Florita Durand-Day, and the other by Lavonda Latrece Evans (collectively, Debtors).

A

Durand-Day filed for Chapter 13 bankruptcy on January 17, 2022. Her monthly disposable income, as defined by 11 U.S.C. § 1325(b)(2), is $2,329.94. This income level qualifies Durand-Day as an above-median-income debtor under § 1325(b)(4), meaning her "applicable commitment period"[1] is five years. Therefore, the amount of money she was projected to earn during her Chapter 13 plan (known as the unsecured creditors' pool, *see, e.g.*, *In re King*, 460 B.R. 708, 710 & n.4 (Bankr. N.D. Tex. 2011)) was $139,796.40—which results from multiplying her monthly disposable income by the applicable commitment period.

In her petition, Durand-Day listed $113,560.65 in nonpriority unsecured claims. *See* § 1322(a)(2) (defining a claim as "nonpriority" when it is "not entitled to priority under" § 507); KEITH M. LUNDIN, LUNDIN ON CHAPTER 13, § 86.3, at ¶ 1, LundinOnChapter13.com (last accessed April 8, 2025) (defining a claim as "unsecured" when there is "no security or collateral for a debt and no right of setoff"). Her list included two student

---

[1] The "applicable commitment period" is a term of art that functions within § 1325(b)'s calculations. Courts dispute how the "applicable commitment period" should be understood to function. *See* W. HOMER DRAKE, JR., ET AL., CHAPTER 13 PRACTICE & PROCEDURE § 8:66 (June 2024 Update). Because it is unnecessary to the outcome, we do not address this dispute.

loans totaling $54,195.00, but her plan listed only $71,580.65 in scheduled unsecured claims. She separately listed one of her student loans, an obligation of $41,980.00, representing that it was "in deferment" and would be paid directly to the lender rather than through the Chapter 13 trustee, Pam Bassel (the Trustee). Durand-Day's plan does not specify whether any payments will be made on the $41,980.00 obligation during the life of her plan.

## B

Evans filed for Chapter 13 bankruptcy on March 25, 2022. Her monthly disposable income under § 1325(b)(2) is $1,726.07. Like Durand-Day, she is an above-median-income debtor whose applicable commitment period is five years. Multiplying Evans's monthly disposable income by the applicable commitment period yielded an unsecured creditors' pool of $103,564.20.

In her petition, Evans listed $106,402.00 in nonpriority unsecured claims, which included twelve student loans totaling $73,927.00. Her plan listed only $32,475.00 in scheduled unsecured claims, however. She separately scheduled each of her student loans, representing that they were "in forbearance"[2] and would be paid directly to the lenders rather than through the Trustee. Evans's plan also does not specify whether any payments would be made on the $73,927.00 in student-loan obligations during the life of her plan.

## C

The Trustee objected under § 1325(b)(1) to Durand-Day's and Evans's plans (collectively, the Plans) on May 11, 2022, and June 22, 2022,

---

[2] The distinction between deferment and forbearance is irrelevant for our purposes.

respectively. She contended that even though Debtors were projected to earn enough disposable income during the applicable commitment period to pay all allowed, unsecured claims, the Plans did not commit to do so. Durand-Day and Evans both argued that their paused student loans had been treated under § 1322(b)(5) and did not need to be paid in full during the life of the Plans.

Addressing both cases simultaneously, the bankruptcy court observed that "§ 1322(b)(5) neither limits nor specifically requires that all payments 'under the plan' be made during the 'applicable commitment period' of the plan." It concluded that although Debtors' student-loan obligations would not be paid in full during the Plans, § 1325(b)(1)(A) was nevertheless satisfied because those obligations would be paid in full "according to their contractual terms as permitted under § 1322(b)(5)." The bankruptcy court accordingly confirmed the Plans, and the Trustee appealed the decision to the district court under 28 U.S.C. § 158(a).

On appeal, the district court consolidated Debtors' cases. Reviewing the issue *de novo*, the district court held that even if the payments toward Debtors' student-loan obligations continued beyond the end of the Plans, those payments were still "under the [Plans]" per § 1325(b)(1)(A). *Bassel v. Durand-Day*, 688 F. Supp. 3d 379, 382–83 (N.D. Tex. 2023). It affirmed the bankruptcy court's decision and entered final judgment in Debtors' favor on August 18, 2023. The Trustee subsequently appealed the district court's order.

## II

"Although this case has been reviewed on appeal by the district court, at this stage we engage in a review of the bankruptcy court's findings just as we would in an appeal coming from a trial in the district court." *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1519 (5th Cir. 1989); *see Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287, 290 (5th Cir. 2017) ("As a 'second

4

review court,' 'our review is properly focused on the actions of the bankruptcy court.'" (brackets omitted) (quoting *Off. Comm. of Unsecured Creditors v. Moeller (In re AGE Refin., Inc.)*, 801 F.3d 530, 538 (5th Cir. 2015))). Accordingly, we review the bankruptcy court's findings of fact for clear error and consider the legal conclusions of both the bankruptcy court and the district court *de novo. Mendoza v. Temple-Inland Mortg. Co. (In re Mendoza)*, 111 F.3d 1264, 1266 (5th Cir. 1997).

### III

### A

"Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991); *see Bastani v. Wells Fargo Bank, N.A.*, 960 F.3d 976, 977 (7th Cir. 2020) ("Chapter 13 is designed for people who can pay most if not all of their debts."). Unlike Chapter 7's liquidating approach, Chapter 13 allows certain debtors to "obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327 (1993); *see Truman v. Meza (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006). Qualifying debt may be discharged after Chapter 13 debtors successfully complete their court-approved payment plans. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

Chapter 13 debtors have "a significant amount of flexibility" in formulating their plans. *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 492 (5th Cir. 1982); *see* § 1322(b)(11) ("[A Chapter 13] plan may . . . include any other appropriate provision not inconsistent with this title."). If a debtor proposes a plan that satisfies § 1325(a)'s requirements, the bankruptcy court "shall confirm" it. *Diaz v. Viegelahn (In re Diaz)*, 972 F.3d 713, 717 (5th Cir. 2020).

No. 23-10956

If the Chapter 13 "trustee or the holder of an allowed[3] unsecured claim objects to the confirmation of [a] plan," however, then a bankruptcy court "may not approve the plan unless, as of the effective date of the plan":

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

§ 1325(b)(1)(A)–(B); *Hamilton v. Lanning*, 560 U.S. 505, 508–09 (2010). In other words, "if the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, the plan may not be confirmed unless the debtor proposes to pay into the plan all of the debtor's 'disposable income' for a specified period or until all allowed unsecured claims are paid in full, whichever is earlier." 8 COLLIER ON BANKRUPTCY ¶ 1325.11[1] (16th ed.), LexisNexis (database updated April 2025).

Here, when the Trustee objected to the Plans, Debtors elected to satisfy § 1325(b)(1)(A). When a debtor elects to satisfy § 1325(b)(1)(A), the debtor must ensure that, as of the plan's effective date, "the value of the property to be distributed under the plan on account of" the allowed, unsecured claims is "not less than the amount of" those claims.

---

[3] "[A]n 'allowed claim' is a valid claim that is properly payable." DRAKE ET AL., *supra*, § 18:1; *see BVS Constr., Inc. v. Prosperity Bank*, 18 F.4th 169, 176–77 (5th Cir. 2021) ("In a bankruptcy proceeding, once a creditor files a proof of claim, the bankruptcy court looks to 11 U.S.C. § 502 to determine whether the claim is allowed.").

§ 1325(b)(1)(A).[4] This means that the trustee's § 1325(b)(1) objection may be overcome if the debtor proposes to pay the *full value* of the allowed, unsecured claims "under the plan." *See Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 718 (5th Cir. 2020); 8 Collier on Bankruptcy, *supra*, ¶ 1325.11[3]. If the debtor cannot do so, then 100% of the debtor's projected disposable income must go to paying those claims during the "applicable commitment period." *See* 5 Norton, *supra*, § 151:19 ("[I]n the face of an appropriate objection, a plan which does not propose for the debtor to pay all of the debtor's projected income cannot be confirmed, unless it proposes that the debtor pay 100% of allowed unsecured claim.").

B

The parties agree that Debtors' student-loan obligations are allowed, unsecured claims. They disagree, however, on timing—whether § 1325(b)(1)(A) requires Debtors to finish paying off their student-loan obligations within the life of the Plans. As noted, the Trustee contends that § 1325(b)(1)(A)'s "under the plan" language requires Debtors to satisfy their student-loan debt before the Plans end, *i.e.*, within § 1322(d)(1)'s maximum plan length.[5] Debtors contend that § 1325(b)(1)(A) is satisfied because they are required to pay their student-loan obligations in full "under

---

[4] One leading treatise suggests that when a Chapter 13 trustee, rather than a holder of an allowed, unsecured claim, objects under § 1325(b)(1), § 1325(b)(1)(A) may not be an available option to debtors to satisfy § 1325(b)(1). *See* William L. Norton III, Norton Bankruptcy Law & Practice 3d § 151:19 (Apr. 2025 Update). Because the parties do not raise this argument, we do not address it.

[5] If a Chapter 13 plan does not draw an objection under § 1325(b)(1), then the Bankruptcy Code only establishes a maximum plan length. *See* § 1322(d). But if there is an objection under § 1325(b)(1), the Bankruptcy Code also establishes a minimum plan length. *See* § 1325(b)(4); *see also In re Sisk*, 962 F.3d 1133, 1146 (9th Cir. 2020) ("[T]he Code provides for a maximum duration for all plans and a minimum duration for objected-to plans.").

the [Plans]," just not during the life of the Plans. At its essence, the parties' disagreement centers on the meaning of "under the plan" in § 1325(b)(1).

1

When interpreting acts of Congress, we seek their "ordinary meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021). We always begin with the statutory text, *Carmichael v. Balke (In re Imperial Petrol. Recovery Corp.)*, 84 F.4th 264, 271 (5th Cir. 2023) (per curiam), and the words Congress enacts are "typically construed according to 'their ordinary, contemporary, common meanings,'" *Cascabel Cattle Co. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020) (brackets omitted) (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 261 (5th Cir. 1999)). If the text of the statute is clear and unambiguous, our inquiry ends, and we give effect to the plain language. *See Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282–83 (5th Cir. 1994).

The phrase "under the plan" is undefined, so "we give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). "Under" means "'subject or pursuant to' or 'by reason of the authority of.'" *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 229 (5th Cir. 2019) (quoting *Ardestani v. INS*, 502 U.S. 129, 135 (1991)). So "the value of the property to be distributed under the plan" must be distributed subject or pursuant to or by reason of the authority of a Chapter 13 plan. *See* § 1325(b)(1)(A). In isolation, both the Trustee's and Debtors' interpretation of "under the plan" are reasonable.

But "statutes 'should not be read as a series of unrelated and isolated provisions,'" *Gonzales v. Oregon*, 546 U.S. 243, 273 (2006) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995)), as "[l]anguage . . . cannot be interpreted apart from context," *Smith v. United States*, 508 U.S. 223, 229 (1993). *See Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968)

No. 23-10956

("Statutes are contextual as well as textual."). This is especially so here because "the word 'under' is a 'chameleon' that 'must draw its meaning from its context.'" *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018) (quoting *Kucana v. Holder*, 558 U.S. 233, 245 (2010)); *see Wyandotte Cnty. Gas Co. v. Kansas ex rel. Marshall*, 231 U.S. 622, 630 (1914) ("[W]e think to divorce the expressions referred to from the context, would be not to interpret and apply, but to distort the statute.").

2

We turn to Chapter 13's statutory scheme. *See United States v. Palomares*, 52 F.4th 640, 642–43 (5th Cir. 2022). Within a statute, "the same term usually has the same meaning." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). The provision worded most similarly to § 1325(b)(1)(A) is a few subsections away, in § 1325(a)(5)(B)(ii).[6] *Compare* § 1325(a)(5)(B)(ii) ("the value, as of the effective date of the plan, of property to be distributed *under the plan* on account of such claim is not less than the allowed amount of such claim" (emphasis added)), *with* § 1325(b)(1)(A) ("as of the effective date of the plan . . . the value of the property to be distributed *under the plan* on account of such claim is not less than the amount of such claim" (emphasis added)). On more than one occasion, the Supreme Court has made clear that "under the plan" in § 1325(a)(5)(B)(ii) means the debtor must finish paying off the value of the allowed, secured claim by the end of the plan. *Accord Barragan-Flores*, 984 F.3d at 474 ("The 'cram down' option allows the

---

[6] Section 1325(a)(5) is the Chapter 13 provision governing the treatment of allowed, secured claims. Section 1325(a)(5)(B) is known as the "'cram down' option." *Barragan-Flores v. Evolve Fed. Credit Union (In re Barragan-Flores)*, 984 F.3d 471, 474 (5th Cir. 2021). Under this provision, the debtor may elect for the holder of an allowed, secured claim to "retain[] the lien securing the claim" so long as the debtor ensures the plan "provides that the value, as of the date of the plan, of property . . . to be distributed *under the plan* to the holder of the claim is not less than the allowed amount of such claim." *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 345 (5th Cir. 2008) (emphasis added).

debtor to keep the collateral over the objection of the creditor and provide the creditor with payments that, *over the life of the plan*, will total the present value of the collateral." (emphasis added)).

For instance, the Supreme Court explained in *Associates Commercial Corp. v. Rash* that the cram down option permits a debtor to keep property "over the objection of the creditor" so long as the debtor, among other things, "provide[s] the creditor with payments, *over the life of the plan*, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral." 520 U.S. 953, 957 (1997) (emphasis added). In other words, as long as a Chapter 13 debtor pays a secured claim holder the present value of the collateral by the end of the plan, the debtor may retain the collateral. A plurality of the Supreme Court emphasized this interpretation of § 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, stating that the cram down option "simply requires bankruptcy courts to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secured claim." 541 U.S. 465, 473–74 (2004). This understanding of "under the plan" is consistent across Chapter 13.[7] *See, e.g.*, *Pierrotti v. U.S. Internal Revenue Serv. (In re Pierrotti)*, 645 F.3d 277, 280 (5th Cir. 2011) (holding that a claim capable of treatment under § 1322(b)(5) is that which has "a final payment date after the conclusion of a Chapter 13 plan's statutorily mandated term"); *In re Brown*, 960 F.3d at 716 (stating that § 1328 permits the discharge of debts under Chapter 13 once "a debtor has made all his payments under a plan"); *accord Kinney v. HSBC*

---

[7] It is the "'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Gustafson*, 513 U.S. at 570 (quoting *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994)); *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170–73 (2012).

*Bank USA, N.A. (In re Kinney)*, 5 F.4th 1136, 1148 (10th Cir. 2021) (Eᴵᴰ, J., concurring in the judgment) ("It was not necessary for Congress to have added an express provision regarding payments made after the five-year period because the language already provides for such a result: a plan expires after five years, and payments cannot be 'under' a plan that has come to an end.").

The statutory scheme as a whole often sheds light on the meaning of specific language because "the same terminology is used elsewhere in a context that makes its meaning clear." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). That is the case here. The provisions of Chapter 13 containing "under the plan" show that the phrase means during the life of the plan. *See Grubbs v. Hous. First Am. Sav. Ass'n*, 730 F.2d 236, 239 (5th Cir. 1984) (en banc) ("The purpose of [C]hapter 13 is to enable an individual, *under court supervision and protection*, to develop and perform *under a plan* for the repayment of his debts over an extended period." (emphasis added) (quoting H.R. Rᴇᴘ. Nᴏ. 95-595, at 118 (1977))). Therefore, to interpret § 1325(b)(1)(A) "as part of 'a symmetrical and coherent regulatory scheme,'" *JetPay Corp. v. U.S. Internal Revenue Serv.*, 26 F.4th 239, 242 (5th Cir. 2022) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)), as we must, "under the plan" bears this same meaning as elsewhere in Chapter 13. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015) ("To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion *(or in the rare case all)* of his debts over the next three to five years." (emphasis added)).

3

"[C]onsideration of BAPCPA's purpose strengthens our reading of" the phrase "under the plan." *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 71 (2011).

Congress initially enacted § 1325(b) "to require the debtor to make a substantial effort to pay his debts." S. Rep. No. 98-65, at 64 (1983); *see* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 317, 98 Stat. 333, 356. This requirement was "[t]he *quid pro quo* for [the] benefits" of Chapter 13. S. Rep. No. 98-65, at 21.

Over time, Congress determined that "certain abuses of the bankruptcy process" had come to pass. *In re Hardacre*, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006). To address these "perceived abuses of the bankruptcy system," Congress enacted BAPCPA, or the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231–32 (2010); *see McCoy v. Miss. State Tax Comm'n (In re McCoy)*, 666 F.3d 924, 927 (5th Cir. 2012). Among other goals, BAPCPA sought "to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31, pt. 1, at 2 (2005); 151 Cong. Rec. S2469 (statement of Sen. Chuck Grassley) ("What we are trying to do is fix a bankruptcy system that has gone awry, where individuals who have the ability to repay their debts don't do so . . . .").

Section 1325(b) operates harmoniously with this purpose. The Chapter 13 trustee, determining that the holders of allowed, unsecured claims are not receiving sufficient payment, may object to a plan to require the debtor to jump through a final hurdle: either ensure that all allowed, unsecured claims are paid in full by the end of the plan's life or contribute all disposable income received during the plan toward payment of the unsecured creditors. *See* § 1325(b)(1); Lundin, *supra*, § 91.7, at ¶ 9 ("If . . . the debtor is

financially unable to pay all unsecured claim holders in full, then the debtor's fallback position is . . . § 1325(b)(1)(B)."). Section 1325(b) simply "help[s] ensure that debtors who can pay creditors do pay them," *Ransom*, 562 U.S. at 64 (emphasis omitted), and that debtors do so *within a specific period of time*, *see Kinney*, 5 F.4th at 1145–47 (majority opinion) (explaining why "Congress intended to strictly limit the time for payments under Chapter 13 plans"). *See Pliler v. Stearns (In re Pliler)*, 747 F.3d 260, 265 (4th Cir. 2014) (holding that the "core purpose" of BAPCPA—ensuring debtors devote what they can to repaying creditors—is "best effectuated when Chapter 13 plans must last for three or five years, depending on the debtors' income, unless all unsecured claims are fully repaid sooner"). Considering § 1325(b)(1)(A)'s terms in light of BAPCPA's purpose cements that "under the plan" means "by the end of the plan."

\* \* \*

Given that § 1325(b)(1)(A)'s use of the phrase "under the plan" means by the end date of a Chapter 13 plan, the statute requires Debtors to pay in full all allowed, unsecured claims—including their student-loan obligations—within the life of the Plans.

## C

Debtors advance two arguments to the contrary.

### 1

Debtors first contend that their student-loan obligations are "under the Plans" per § 1325(b)(1)(A) because they are "provided for by the Plans" under § 1322(b)(5). But the "usual presumption" is "that 'differences in language . . . convey differences in meaning.'" *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)). Just as we presume that the same words in a statute bear the same meaning, we also presume that "different text carries with it a

choice of different meaning." *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019); *see United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended."). Congress used the phrases "provided for by the plan" and "under the plan" throughout Chapter 13, even placing both in the same provision in three different places. *See* §§ 1325(a)(5), 1328(a), 1329(a). Debtors offer no justification to deviate from the presumption that different language carries different meaning, and we find none.

Furthermore, Debtors' contention that "provided for by the plan" and "under the plan" have the same meaning would de-harmonize Chapter 13's statutory scheme by rendering some of its provisions "idle and nugatory." *Aspley v. Murphy*, 52 F. 570, 574 (5th Cir. 1892) (quoting Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union 58 (1868)). For instance, § 1328(a) sets out when a bankruptcy court may grant a discharge to a Chapter 13 debtor: "as soon as practicable after completion by the debtor of all payments under the plan." Yet according to Debtors' reading—which maintains that payments to their student-loan creditors are "under the plan" even if they occur after the Plans end—a discharge would not be available until they finish paying off their student loans. By definition, this would take place after § 1322(d)(1)'s five-year maximum plan length. *See* § 1322(b)(5); *see also* Lundin, *supra*, § 112.5, at ¶ 3 ("[Section] 1322(d) prevents debtors from paying claims over a period longer than the plan."). Because we avoid "interpretations which render parts of a statute inoperative or superfluous," *Duke v. Univ. of Tex. at El Paso*, 663 F.2d 522, 526 (5th Cir. Dec. 1981), we cannot countenance Debtors' reading of "provided for by the plan" and "under the plan."

2

Debtors also contend that the Trustee's reading of § 1325(b)(1) would "completely eviscerate" § 1322(b)(5). The statutory text does not support this argument. Section 1325(a) uses the word "shall": "Except as provided in subsection (b), the court *shall* confirm a plan" that meets the requirements set out in subsection(a). 11 U.S.C. § 1325(a) (emphasis added). Section 1325(b)(1) "is an exception to that command." *In re Brown*, 960 F.3d at 716. If the trustee objects, "the court *may not* approve the plan" unless the plan meets the requirements set out in § 1325(b)(1). *See* § 1325(b)(1) (emphasis added). Under the Bankruptcy Code's rules of construction, "'may not' is prohibitive, and not permissive." § 102(4). In contrast, § 1322(b)(5) uses the word "may". For a Chapter 13 plan to be confirmed, § 1325(b)(1) (if applicable) *must* be satisfied, while § 1322(b)(5) is not necessary for confirmation. *See* GARNER & SCALIA, *supra*, at 112 ("Mandatory words impose a duty; permissive words grant discretion."); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("[U]se of a mandatory 'shall' . . . impose[s] discretionless obligations."); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty."). Given the differing language in these provisions, no conflict exists—if there is no objection to a plan under § 1325(b)(1), then § 1322(b)(5) may operate normally. But if there is an objection, then § 1325(b)(1) may negate § 1322(b)(5). Otherwise, the interaction between § 1325(b)(1) and § 1322(b)(5) would result in a permissive provision trumping a mandatory one, which runs counter to ordinary meaning and standard interpretive practices. *Cf. United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("Reading the BRA's permissive use of release to supersede the INA's mandatory detention does

not follow logically nor would doing so be congruent with our canons of statutory interpretation.").

Moreover, the premise of Debtors' contention is missing key context—§ 1325(b)(1)(A) is not the only way to satisfy § 1325(b)(1). Debtors may also satisfy § 1325(b)(1) by applying all their "projected disposable income to be received in the applicable commitment period . . . to make payments" to the holders of allowed, unsecured claims under the Plans. § 1325(b)(1)(B). And under § 1325(b)(1)(B), Debtors may treat their student-loan obligations under § 1322(b)(5) as long as they are contributing 100% of their disposable income to paying off all allowed, unsecured claims (including the student loans).

\*    \*    \*

Bankruptcy courts wield considerable authority, but only within the bounds Congress sets out in the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" (quoting 2 Collier on Bankruptcy ¶ 105.01[2], 105–06 (16th ed. 2013)). By enacting § 1325(b)(1) as it did, Congress ensured that the statute determines "the balance between debtors and creditors." *United States v. Frontone*, 383 F.3d 656, 659 (7th Cir. 2004). "[T]o ensure that debtors repay creditors the maximum they can afford," H.R. Rep. No. 109-31, pt. 1, at 2, debtors must either ensure that all allowed, unsecured claims are paid in full by the end of the plan's life or contribute all disposable income received during the plan toward payment of the unsecured creditors, § 1325(b)(1). Despite Debtors' legitimate concerns, we are "not at liberty to 'alter the balance struck by the statute.'" *Sisk*, 962 F.3d at 1145 (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017)); *see Badaracco v.*

*Comm'r*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

Because the text of § 1325(b)(1)(A), in context, is plain and unambiguous, the statute's plain meaning must be effectuated. *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024).

## IV

For these reasons, we VACATE the confirmation of the Plans and REMAND to allow Debtors to file new plans consistent with this decision.

No. 23-10956

PRISCILLA RICHMAN, *Circuit Judge*, dissenting:

In this Chapter 13 bankruptcy proceeding, the trustee demanded that repayment of long-term, non-dischargeable student loan debt be accelerated and repaid years before it is due in order for the debtors' respective bankruptcy plans to be confirmed. The bankruptcy court and the district court overruled the trustee's objections and confirmed both plans. I would affirm. The district court's and bankruptcy court's rulings are supported both by the facts in this case and the applicable statutes. Accordingly, with great respect to the views of the panel's majority, I dissent.

**I**

Victoria Durand-Day filed for protection under Chapter 13 of the Bankruptcy Code, as did Lavonda Latrece Evans in a separate proceeding. The parties in each of the bankruptcy proceedings stipulated that the debtors had federal student loan debt that was non-dischargeable under 11 U.S.C. § 523(a)(8). The United States Department of Education filed a claim in Durand-Day's case, identifying the loan as a non-dischargeable debt under § 523(a)(8). Evan's plan reflects that "Fed Loan Serv" filed a claim designated as in a "Special Class." The loans are unsecured.

The plans provide that all unsecured debt other than the student loans will be repaid in full during the sixty-month duration of the bankruptcy plan. The student loans, however, will be fully repaid under the terms of the loans, with interest, beyond that sixty-month period and will be paid directly to the creditors. Each of the debtors has disposable income, after allowing for one-hundred-percent payment of debts during the term of the plan, that could be used to repay the full amounts of the student loans during the sixty-month duration of the plan if that debt is accelerated. However, the bankruptcy and district courts permitted the non-dischargeable students loans to be repaid beyond that sixty-month period. The trustee objected to this, asserting that

18

the debtors must repay the student loans within the sixty-month duration of the plan in order to have the plan approved.

## II

The primary issue in this appeal is the meaning of "under the plan" as used in the bankruptcy code provision set forth in 11 U.S.C. § 1325(b)(1)(A). That section provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the value of the property to be distributed *under the plan* on account of such claim is not less than the amount of such claim.[1]

The trustee contends that repayment of the student loans based on their existing terms would result in payments after the effective date of the plan and after the plan's sixty-month duration ends. Therefore, the trustee reasons, the student loan repayments would not be "under the plan" since the debt would not be fully repaid *during* the plan. This argument should be rejected. The term "under the plan" as used in § 1325(b)(1)(A) is not limited to *during* the plan. The concept of *during* the plan is encompassed within, but not as broad as, "under" the plan. In other words, non-dischargeable debts can be provided for "under the plan" even though they will not be repaid *during* the plan. The plans approved by the bankruptcy and district courts provide that the student loans themselves remain fully intact and will be repaid directly to the creditors. The "value" of each loan is the amount of principal and interest to be paid over the life of the loans. The student loan debt itself is "distributed" to each creditor "under the plan" because the

---

[1] 11 U.S.C. § 1325(b)(1)(A) (emphasis added).

plan recognizes that payments will be made directly to the creditor over the life of the long-term loan. Stated another way, the "value of the property" is "distributed under the plan" because "the plan" contemplates that the debt will be repaid with interest in accordance with its terms.

A second bankruptcy code provision, 11 U.S.C. § 1322(b)(5), aids in understanding that bankruptcy plans may recognize that certain long-term debts are not discharged and will be repaid long after other debts are repaid and discharged under "the plan." There, the Bankruptcy Code says that a bankruptcy "plan" may recognize that payments on certain unsecured or secured claims will continue to be "due" "after the date on which the final payment under the plan is due."[2] This provision is sometimes referred to as the long-term debt provision.[3] Its wording is admittedly clumsy. But the most reasonable interpretation of it, and the one I think Congress envisioned, was that a "plan" may recognize that a future payment or payments will continue to be due under long-term, non-dischargeable loans "after the date on which the final payment under the plan is due." The pertinent text of the long-term payment provisions says:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
>                                   \* \* \*
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
>                                   \* \* \*

---

[2] *Id.* § 1322(b)(5).

[3] *See, e.g.*, *In re Sullivan*, 195 B.R. 649, 653 (Bankr. W.D. Tex. 1996).

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . . .[4]

The reference to "the final payment under the plan" ties in with when the bankruptcy court must grant a discharge. Under 11 U.S.C. § 1328(a)(1), "as soon as practicable after completion by the debtor of all payments under the plan," the court "shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt . . . provided for under section 1322(b)(5)."[5] Another subsection of § 1328 similarly provides that "debt . . . provided for under section 1322(b)(5)" is not subject to discharge.[6] So, these provisions contemplate that "the plan" will have a "final payment" date for dischargeable debt, but "the plan" may also recognize that payments will continue to be due under long-term, non-dischargeable debts after the "last payment" for dischargeable debts "under the plan."

Bankruptcy courts have construed § 1322(b)(5) to mean that a plan can recognize that future payments will be due for long-term, non-dischargeable debt even if there was no default on or a cure required as to that debt prior to or during the pendency of the bankruptcy proceedings.[7]

_____

[4] 11 U.S.C. § 1322(b)(2), (5).

[5] *Id.* § 1328(a)(1).

[6] *Id.* § 1328(c)(1) ("A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—(1) provided for under section 1322(b)(5) of this title.").

[7] *See generally In re Nieves*, 647 B.R. 809, 829 (B.A.P. 1st Cir. 2023) (citing and discussing cases); *id.* at 830 ("We agree with those courts that have ruled that debtors may

No. 23-10956

When "the plan" recognizes that an unsecured claim will not be discharged and "the last payment" on that claim will be "due after the date on which the final payment under the plan is due," it is fair to say that the future payments of the long-term, non-discharged debts are contemplated "under the plan" just as much as payments for dischargeable debts are contemplated "under the plan."

Legislative imprecision may explain any apparent inconsistencies in the interpretation of the operative phrase "under the plan" in these two provisions. One preeminent bankruptcy treatise has noted, "As with many of the 1984 amendments to the Code, application of Code § 1325(b) is problematic because of the inartful use of words and the incorporation of statutory requirements that are not consistent with other provisions of the 1978 statute."[8] While § 1322(b)(5) was part of the original 1978 enactment of the Bankruptcy Code,[9] § 1325(b)(1)(A) was added to the Code with the 1984 amendment.[10] The language in both provisions has remained the same since their respective enactments.[11] Therefore, Congress's "inartful" phrasing in the 1984 amendment and use of language in a manner "not

---

treat long-term debt claims under § 1322(b)(5) even in the absence of the need to cure a pre-petition default.").

[8] 5 William L. Norton III, Norton Bankruptcy Law & Practice 3d § 151:19, Westlaw (database updated Apr. 2025).

[9] An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub. L. No. 95-598, § 1322, 92 Stat. 2549, 2648 (codified at 11 U.S.C. § 1322(b)(5)).

[10] Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 317, 98 Stat. 333, 356 (codified at 11 U.S.C. § 1325(b)(1)(A)).

[11] *Compare* An Act to Establish a Uniform Law on the Subject of Bankruptcies, 92 Stat. at 2648, *with* 11 U.S.C. § 1322(b)(5). *Compare* Bankruptcy Amendments and Federal Judgeship Act of 1984 § 317, *with* 11 U.S.C. § 1325(b)(1)(A).

consistent" with the 1978 statute accounts for any confusion regarding the phrase "under the plan" here.

Both plans at issue in this appeal recognize that the long-term student loans are non-dischargeable debts and that future payments would be required after the final payment of dischargeable debts. The two debtors are above-median-income debtors, so, under the Bankruptcy Code, their plans "may not provide for payments over a period that is longer than 5 years."[12] But as already discussed, § 1322(b)(5) expressly provides that "the plan may" permit payments to be made to maintain non-dischargeable debt that is due beyond this five-year period. As a bankruptcy court has explained,

> [t]he three to five year limitation on plan payments of [§] 1322(c) would then have no application because [§] 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."[13]

In *In re Nieves*,[14] a bankruptcy appeals panel likewise held that § 1322(b)(5) permits a plan to maintain contractual payments for the remaining term of the debt even though the final payment of the debt is to be paid after the three- or five-year term of a plan.[15] The court did so based on its interpretation of the text of § 1322(b)(5).[16] The court additionally explained, however, that even though the text could be clearer, the intent of Congress was clear and that requiring long-term contracts to be accelerated

---

[12] 11 U.S.C. § 1322(d)(1).

[13] *In re McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994).

[14] 647 B.R. 809 (B.A.P. 1st Cir. 2023).

[15] *Id.* at 830.

[16] *See id.* at 828-30.

to be paid within a three- to five-year plan limitation would scuttle protections Congress intended to provide to homeowners and other borrowers under long-term contracts:

> While the statute could be clearer on this issue, and it may be that Congress missed a cross-reference, it is abundantly clear that Congress intended § 1322(b)(5) to permit debtors to include in chapter 13 plans provisions to "maintain" contractual payments to holders of claims where the term of a loan extends beyond the plan period. Adopting [the creditor's] interpretation of § 1325(a)(5) would invalidate "cure and maintain" plans routinely confirmed by bankruptcy courts addressing home mortgage claims and would directly contradict the will of Congress clearly expressed in § 1322(b)(5).[17]

The bankruptcy appeals panel in *Nieves* concluded that "§ 1325(a)(5)(B)(ii) must be read such that the present value of the amounts provided to be distributed under the Plan including the payments extending beyond the Plan term is not less than the amount of [the creditor's] allowed secured claim."[18] The text of § 1325(a)(5)(B)(ii) pertains only to secured claims but is otherwise similar, though not identical, to § 1325(b)(1)(A). The former provides:

> Except as provided in subsection (b), the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . the value, as of the effective date of the plan, of property to be distributed *under the plan* on account of such claim is not less than the allowed amount of such claim.[19]

---

[17] *Id*. at 831.

[18] *Id*.

[19] 11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added).

No. 23-10956

Recall that § 1325(b)(1)(A) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the value of the property to be distributed *under the plan* on account of such claim is not less than the amount of such claim.[20]

If the rationale of the alternative holding in *Nieves* is applied to the facts presently before us, it should be clear that the value of the student loan agreement to each creditor is not less than the amount of their claims regarding those loans, since the loans remain intact and must be fully repaid, with interest, though repayment extends beyond the sixty-month duration of the plans. The plans each recognize that the debtor will make payments to the creditor directly, in accordance with the loan agreement's terms.

*       *       *

Because I would affirm the district court, I respectfully dissent.

---

[20] *Id.* § 1325(b)(1)(A) (emphasis added).